WILLIAM F. KETTINGER *vs.* BLACK & DECKER MANUFACTURING CO. March 22, 1982. Kettinger in the late autumn of 1972 purchased in a retail store a circular saw manufactured by the defendant (B&D), taken from the store's window display. It was not accompanied by an instruction manual. Kettinger had no training or experience with a tool of this type. Between the 1972 purchase of the saw and July 16, 1974, he himself used the saw fifteen to twenty times. His sons, all at least eighteen years old, also had used the saw. He had not been told whether they had dropped the saw and he himself testified that he had not dropped it prior to July 16, 1974.

On July 16, 1974, he was cutting boards about one and three-quarter inches to two inches thick, when the saw "bucked back . . . and . . . struck . . . [his] stomach." He "tried to push it back and it cut . . . [his] hand" so that his "fingers were hanging."

The present action seeks to recover from B&D damages for Kettinger's injuries on the ground that B&D "failed to design the saw so that there would not be any rubbing parts between the stationary housing [of the saw] and [its] removeable [*sic*] guard" and so that sawdust would not accumulate "between the guard and pivot point." There was also an issue whether there was adequate warning of the dangers of the saw which presented obvious risks of cutting the user.

The expert testimony most favorable to Kettinger indicated that the saw showed abrasion, that the bottom guard as it retracted was rubbing against the upper guard and was sticking open, that the fixed upper housing of the saw was bent, probably as a consequence of a blow sometime before the accident, and that there was side movement of the lower guard. There was evidence that the "sticking" was caused by a combination of the accumulation of sawdust and the rubbing of the upper guard and the lower guard. The expert called by Kettinger was of opinion that

the clearance space at the bearing could have been kept closer "to prevent the infiltration of sawdust" and that stiffening of the saw's housing, "so [that] it would withstand a normal, reasonable number of drops or abuses would have prevented this type of accident." The expert also testified that these design changes could have been made without an appreciable cost, "[i]nsignificant to overall design cost." No warnings appeared on the saw itself (as opposed to the printed instructions) although there was space for at least a brief warning not to operate the saw without first reading the instruction manual.

The trial judge denied a motion for a directed verdict. We cannot say that even the somewhat unimpressive expert testimony did not warrant submitting the case to the jury under cases like *Smith* v. *Ariens Co.*, 375 Mass. 620, 623-627 (1978), *Uloth* v. *City Tank Corp.*, 376 Mass. 874, 877-882 (1978), *Carey* v. *General Motors Corp.*, 377 Mass. 736, 739-745 (1979), and *Griffin* v. *General Motors Corp.*, 380 Mass. 362, 364-366 (1980). See *Fegan* v. *Lynn Ladder Co.*, 3 Mass. App. Ct. 60, 62-65 (1975); *Hayes* v. *Hobart Corp.*, 7 Mass. App. Ct. 889 (1979); *McLeod* v. *White Motor Corp.*, 9 Mass. App. Ct. 132, 134-136 (1980); *Fiorentino* v. *A.E. Staley Mfg. Co.*, 11 Mass. App. Ct. 428, 429-436 (1981).

2. The trial judge submitted the case to the jury on special questions. Mass.R.Civ.P. 49(a), 365 Mass. 812 (1974). Question 5 read, "What sum of money represents the damages suffered by . . . Kettinger?" Question 6 read, "In percentages, to what degree did the negligence of each party contribute to the damages suffered by . . . Kettinger?" Earlier questions had dealt appropriately with the issues of liability and causation.

The jury during their deliberations sent two questions to the trial judge which read, "What is the relationship between questions 5 and 6? Does question 6 have any bearing on the amount of damages that might be awarded to" Kettinger? After consulting counsel, the judge gave further instructions about comparative negligence, to the substance of which neither counsel objected. Counsel for B&D took the position that it was the jury's duty to answer the questions as put to them. His objection was noted. The jury found that Kettinger's damages were $74,500 and that Kettinger's negligence contributed to the damages to the extent of thirty-five percent. From a judgment accordingly, B&D has appealed.

The Massachusetts rule 49 is based on the similarly numbered Federal rule. Under that rule there has been conflict in the decisions concerning whether the trial judge must or should give instructions concerning the consequences of various answers to particular questions. See 9 Wright & Miller, Federal Practice and Procedure § 2509 (1971 and 1982 Supp.), where the authorities are collected. Under our rule 49, whether to ask special questions appears to be discretionary with the trial judge. Particularly *should this be the case where the "comparative negligence" of the parties must be appraised.* Compare G. L. c. 231, § 85, as appearing in St. 1969, c. 761, § 1, where such special questions were required, with

§ 85, as amended in St. 1973, c. 1123, § 1, removing the requirement. We perceive no reason, when asked by the jury for further explanation, why the judge may not give it in his discretion. We think, as a discretionary matter, he may also require that the jury give answers to the questions put to them without further instructions or explanation. See *Charles L. Hazelton & Sons* v. *Teel*, 349 Mass. 617, 620 (1965); *McCormick* v. *B.F. Goodrich Co.*, 8 Mass. App. Ct. 885, 886 (1979). See also *Everett* v. *Bucky Warren, Inc.*, 376 Mass. 280, 284-285, 291-292 (1978); *Riley* v. *Davison Constr. Co.*, 381 Mass. 432, 442-443 (1980). Requiring such answers perhaps may have some tendency to promote the objectivity of the answers but the matter, in a particular instance, rests in the sound discretion of the trial judge. See discussion in Smith & Zobel, Rules Practice §§ 49.1-49.11 (1977 and 1981 Supp.); Bouchard, Apportionment of Damages Under Comparative Negligence, 55 Mass. L.Q. 125, 131-133 (1970).

3. No part of the cost of the plaintiff's brief is to be assessed as costs of appeal or to be charged by counsel to the plaintiff as a disbursement. In violation of Mass.R.A.P. 16(g), 367 Mass. 919 (1975), the plaintiff's counsel has caused inconvenience to the court by failure to furnish citations of recent Massachusetts decisions to the official advance sheets. The clerk has been instructed to refuse to receive briefs which do not provide citations to the official reports and advance sheets.

*Judgment affirmed.*

*James T. Ronan* for the defendant.
*Bruce N. Sachar* for the plaintiff.