Martha L. SAUNDERS, Administratrix
of the Estate of Claude Saunders,
Plaintiff, Appellant,

v.

STATE OF RHODE ISLAND, et al.,
Defendants, Appellees.

No. 82–1887.

United States Court of Appeals,
First Circuit.

Argued Dec. 9, 1983.

Decided March 30, 1984.

Thomas A. Tarro III, Providence, R.I., for plaintiff, appellant.

John R. McDermott, Sp. Asst. Atty. Gen., Providence, R.I., with whom Dennis J. Roberts II, Atty. Gen., Providence, R.I., was on brief, for defendants, appellees.

Before CAMPBELL, Chief Judge, BOWNES and BREYER, Circuit Judges.

BOWNES, Circuit Judge.

The factual and procedural history giving rise to this appeal is as follows. On November 2, 1974, while incarcerated in the maximum security facility of the Adult Correctional Institutions (ACI), Claude E. Saunders was murdered by several inmates. According to the record, the culpable prisoners evaded detection by the guards on duty and stationed themselves outside of Saunders' cell, and when the cells were opened for the evening recreation period stabbed him to death. Saunders had not requested protective custody.

Plaintiff-appellant Martha L. Saunders brought a 42 U.S.C. § 1983 civil rights action and a pendent state claim for wrongful death against defendants-appellees the State of Rhode Island and James W. Mullen, then warden of the ACI. ·She alleged that because of ACI's inadequate physical conditions and security procedures inmate violence was rampant, that the facility's classification system did not properly segregate prisoners with violent propensities, that these practices were tantamount to an official custom or policy of the State of Rhode Island, and that defendant Mullen acquiesced in their continuance, thereby violating Claude Saunders' rights under the fourteenth and eighth amendments. Plaintiff also asserted that both prison personnel and the state were negligent in failing to adequately protect her son on the night of his death.

The civil rights action and the pendent state negligence action were tried to a jury. Because, in the judgment of the district court, the wrongful death negligence action involved difficult legal questions concerning the state's liability for injuries to prisoners, the jury was instructed separately on the federal and state claims. After being instructed generally and on the federal claim, the jury returned a verdict in favor of both defendants.[1] The jury was then instructed on the state negligence claim for wrongful death; the court incorporated by reference the general instructions already given. The jury was then given sixteen interrogatories to answer.[2] The jury by its answers to the interrogatories found that the state was liable, that Warden Mullen was not liable, and that Claude Saunders was 50% contributorily negligent. The court, after consultation with counsel, decided to have the jury determine the amount of damages against the state. The jury found total damages in the amount of $121,500 which it reduced in accord with its contributory negligent finding to $60,775. Judgment was not entered on the verdict because the court identified an apparent inconsistency in the jury answers and, with counsel's agreement, decided to certify three novel negligence questions to the Rhode Island Supreme Court:

1. Do the State of Rhode Island, its officers, and employees have a duty to

---

1. Judgment was duly entered and no appeal has been taken in this action.

2. *The Special Interrogatories and Jury Answers*

1. On the night of Saunders' death, did the guards in cellblock ABC fail to exercise reasonable care in affording Saunders adequate protection from attack? Answer—Yes

2. If "Yes," answer the following question. Was this failure a proximate cause of Saunders' death? Answer—Yes

3. Did defendant Mullen know of the practice of allowing some prisoners out of their cells during lockup? Answer—Yes

4. If "Yes," was his action in permitting this practice to continue a failure to exercise reasonable care in affording Saunders adequate protection from attack? Answer—No

5. If "Yes," answer the following question. Was this failure a proximate cause of Saunders' death? Answer—No

6. Did the physical facilities, staffing and/or classification system at the ACI in 1974 evidence a failure by the State to exercise reasonable care in affording Saunders adequate protection from attack? Answer—Yes

7. If "Yes," answer the following question. Was this failure a proximate cause of Saunders' death? Answer—Yes

8. Did prison personnel know, or have reason to anticipate, that Saunders was in danger? Answer—No

9. Did prison personnel know, or have reason to anticipate, that the inmate who killed Saunders might attack him? Answer—No

10. Did prison personnel know, or have reason to anticipate, that the inmate who killed Saunders had dangerous propensities and/or was likely to be involved in a violent outburst? Answer—No

11. Do you find Claude E. Saunders negligent? Answer—Yes

12. Do you find the State of Rhode Island negligent? Answer—Yes

13. Do you find James W. Mullen negligent? Answer—No

14. If you have answered question number 11 "Yes," then what percentage of negligence do you charge to Claude E. Saunders? Answer—50%

15. If you have answered question number 12 "Yes," then what percentage of negligence do you charge to the State of Rhode Island? Answer—50%

16. If you have answered question number 13 "Yes," then what percentage of negligence do you charge to James W. Mullen? Answer—0%

exercise *reasonable* care to protect prisoners in state correctional institutions from violent attack by other inmates, or is their duty measured by some other standard of care?

2. In order to establish a violation of this duty, must a plaintiff prove *any* of the following:

(a) That prison personnel knew, or had reason to anticipate, that the victim was in danger?

(b) That prison personnel knew, or had reason to anticipate, that the aggressor might attack the victim?

(c) That prison personnel knew, or had reason to anticipate, that the aggressor had dangerous propensities and/or was likely to be involved in a violent outburst?

3. Is the State of Rhode Island liable on the theory of *respondeat superior* for the negligence of prison guards, which negligence was a proximate cause of the death of an inmate at the hands of another prisoner?

The certification order included the interrogatories and answers thereto.

The Supreme Court of Rhode Island answered the three questions in the affirmative. *Saunders, Administratrix v. State of Rhode Island,* 446 A.2d 748, 750–52 (R.I. 1982). After receiving the State Supreme Court opinion, the district court set aside the verdict on damages and entered judgment for the defendants. It reasoned that the negative answers to interrogatories 8, 9, and 10 "show that none of the conditions required by Rhode Island for the imposition of liability have been met," and "when evaluated in light of the Rhode Island Supreme Court's answers to the certified question, the answers to the interrogatories are inconsistent with the general verdict for plaintiff."

Appellant asserts two claims on appeal, that the verdict of $60,775 should be reinstated or, in the alternative, that she should be granted a new trial on the basis of newly discovered evidence.

■ We start our analysis with Federal Rule Civil Procedure 49(b)[3] dealing with a general verdict accompanied by answers to interrogatories, which provides in pertinent part:

When the general verdict and the answers are harmonious, the appropriate judgment upon the verdict and answers shall be entered pursuant to Rule 58. When the answers are consistent with each other but one or more is inconsistent with the general verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial. When the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, judgment shall not be entered, but the court shall return the jury for further consideration of its answers and verdict or shall order a new trial.

The rule covers three separate contingencies which we discuss seriatim.

It is clear that the negative answers to interrogatories 8, 9, and 10 are not harmonious with the general verdict. The jury found that there was no reason for prison personnel to know or anticipate that Saunders was in danger (8), or that the inmate who killed Saunders might attack him (9), or that the killer had dangerous propensities likely to result in violence (10). The Rhode Island Supreme Court made such knowledge a predicate to liability by answering certified question number two in the affirmative. Under the first contingency of the rule, then, judgment on the general verdict could not be entered.

Although not explicitly so stating, the court apparently found that the second contingency under the rule applied: "When

---

**3.** The district court and the parties have assumed that Fed.R.Civ.P. 49(b) is applicable. Although it might be argued that 49(a) applies or that this is a hybrid situation involving both paragraphs (a) and (b) of the rule, we assume, as did the court below and the parties, that 49(b) controls.

the answers are consistent with each other but one or more is inconsistent with the general verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict ...." We do not agree that the second contingency applied. The answers are not consistent with each other.

The jury found in answer to interrogatories 1 and 2 that the guards failed to exercise reasonable care in affording Saunders adequate protection from attack and this failure was a proximate cause of Saunders' death. In answer to interrogatory 3, the jury found that Mullen knew of the practice of allowing some prisoners out of their cells during lockup but found in answering interrogatory 4 that his action in allowing this practice to continue was not a failure to exercise reasonable care, and in the answer to interrogatory 5 that this failure was not a proximate cause of Saunders' death. By the answer to interrogatories 6 and 7, the jury found that the "physical facilities, staffing and/or classification system at the ACI evidenced a failure by the State to exercise reasonable care in affording Saunders adequate protection from attack," and that this failure was a proximate cause of his death. In answer to interrogatory 13, the jury found the state negligent but the answer to the following interrogatory (14) found Mullen, the warden, not negligent.

By the answers to interrogatories 1 and 2, the jury found the guards causally negligent for failing to exercise reasonable care in protecting Saunders from attack. This is hard to square with the answer to interrogatory 8, finding that the prison personnel did not know or have reason to anticipate that Saunders was in danger. If the guards did not know or have reason to anticipate that Saunders was in danger, they could not have been negligent in failing to protect him. It also was inconsistent for the jury to find the State liable because of the staffing and/or classification system at the facility but find that the person in charge was blameless. We have been pointed to no evidence in the record, nor found any, suggesting that Mullen had

warned the State about deficiencies in the staffing or classification system. Warden Mullen was the State's agent directly responsible for the staffing and classification system at ACI. If the State was liable for failures in the system, such liability had to be based on what Mullen did or failed to do. It would appear that the jury was either determined to award damages and save Mullen harmless or confused the negligence action with the civil rights case. The district court seems to have concentrated exclusively on the answers to interrogatories 8, 9, and 10 and ignored the others. The second contingency of the rule requires that all of the answers be "consistent with each other" as well as that "one or more is inconsistent with the general verdict."

The only part of the rule into which all the answers to the interrogatories comfortably fit is contingency three, "the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict." When this occurs, the rule mandates that "judgment shall not be entered, but, the court shall return the jury for further consideration of its answers and verdict or shall order a new trial." Because the jury had long since been discharged when the state's answers to the certified questions were received, the district court had no choice under the rule but to order a new trial.

We are not impressed with appellant's argument that the seventh amendment's emphasis on the jury as sole arbiter of the facts requires us to reconcile the answers so as to uphold the damages verdict. This means ignoring the answers to interrogatories 1, 2, 8, 9, and 10 and recognizing only the answers to interrogatories 6, 7, and 12. This would save the verdict but emasculate Rule 49(b).

■ Our opinion, however, does not rest on Rule 49(b) alone. In light of the negligence rulings made by the Rhode Island Supreme Court, the jury instructions were incomplete. The reason for this lay in the timing of the certification procedure. Usu-

ally, the certification of questions to a state Supreme Court precedes, not follows, the trial. This allows full and complete instructions on the applicable state law. Here, however, there was no instruction on prior notice which the Rhode Island Supreme Court found had to be proved by the plaintiff in a prison case based on negligence. Only the standard instruction was given: "Now, negligence is the failure of one person acting in given circumstances to exercise that degree of care for the safety of another which a reasonably prudent person would have exercised for the safety of such other in the same or similar circumstances." This was amplified and explained fully and correctly but the jury was not instructed, because it was not the law at the time, that prison personnel could not be held liable in negligence unless they had actual or constructive notice that the victim was in danger, or that the aggressor might attack the victim, or that the aggressor had dangerous propensities likely to erupt into violence. Answer to Certified Question No. 2. We can only speculate as to the effect such an instruction would have had on the answers to the interrogatories, but it is clear that the jury was not, as it should have been, fully and correctly instructed on the applicable law of the case. *McClendon v. Reynolds Electrical and Engineering*, 432 F.2d 320 (5th Cir.1970); *Petrole v. George A. Fetter, Inc.*, 411 F.2d 5 (3d Cir. 1969).

We also think, in light of the state court's express ruling that the state was liable on the theory of *respondeat superior* for the negligence of prison guards, that it was error not to include an explanation of *respondeat superior* in the instructions on negligence. The doctrine was explained in the instructions on the civil rights claims but only in that context.[4] The jury might well have thought it did not apply to the negligence claims.

4. The instruction was as follows:
Now, of course, the State can only act through the people it hires as its employees and officials. If they act to implement the custom and policy of the State, then it is State action.

 Normally, of course, the failure to object to omissions in the charge would be fatal, Fed.R.Civ.P. 51, but, here, in light of the unusual certification procedure used, the basis for objection only became known long after the charge was given.

The mandate of Federal Rule of Civil Procedure 49(b) and the failure to give complete and accurate jury instructions requires a new trial on the negligence claims.

This ruling makes it unnecessary to decide whether the district court erred in not ordering a new trial on the basis of newly discovered evidence.

Costs in favor of appellant.

However, when State officials and employees act on their own account and cause harm that was not explicitly authorized or implicitly approved by official practice or regulation, then the State is not responsible.