**Elizabeth DOWNS, Plaintiff,**

v.

**GULF & WESTERN MANUFACTURING CO., INC., Defendant.**

**Civ. A. No. 81–1386–G.**

United States District Court,
D. Massachusetts.

May 27, 1987.

William J. Dailey, Jr., Sloane and Walsh, Neil Sugarman & David A. Angier, Sugarman & Sugarman, Boston, Mass., for plaintiff.

Anil Madan, Rosann Madan, Madan & Madan, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER GRANTING A NEW TRIAL

GARRITY, District Judge.

The plaintiff, Elizabeth Downs, worked for a time as a punch press operator. She brought suit against the defendant, Gulf & Western Mfg. Co., after one of her hands was inadvertently caught and severely damaged in a press's powerful stroking mechanism. She sustained the injury in 1980 while operating a press made in 1944 by E.W. Bliss Co., formerly a separate entity and now a division of the defendant. She claims that her injury resulted, first, from defendant's negligent design, manufacture, and sale of the press without proper safety devices and adequate warnings of

dangerousness and, second, from defendant's breach of an implied warranty of merchantability. After a trial lasting several days, a jury of six men and women returned a special verdict with their answers, "yes" or "no", to a series of questions of fact.[1] The jury found that defendant's negligence contributed to plaintiff's injury to the extent of 15%; that defendant had not breached an implied warranty of merchantability; and that plaintiff had "misused" the press within the meaning of *Allen v. Chance Mfg. Co., Inc.*, 1986, 398 Mass. 32, 34–35, 494 N.E.2d 1324 and *Correia v. Firestone Tire & Rubber Co.*, 1983, 388 Mass. 342, 355–56, 446 N.E.2d 1033.

Before the court is a motion submitted by plaintiff, styled a "motion for entry of judgment", seeking an award of damages despite the adverse findings of the jury.[2] The argument underlying her motion has two parts. First, under the rule of *Hayes v. Ariens Co.*, 1984, 391 Mass. 407, 410–11, 462 N.E.2d 273, *see Laaperi v. Sears, Roebuck & Co., Inc.*, 1 Cir.1986, 787 F.2d 726, 728–29 n. 1, a finding that defendant was negligent, even to the degree of only 15%, compelled, as a matter of law, a finding that defendant had breached an implied warranty of merchantability, even though the jury had concluded otherwise.[3] And second, defendant failed to adduce legally sufficient evidence of "product misuse", a complete defense to a breach of warranty claim.[4] Hence a judgment for plaintiff on that theory of liability was warranted. The

defendant has opposed this line of argument on the grounds that plaintiff waived her right to post-judgment relief by failing to contest the jury's findings before it had been discharged; that she has moved for relief in an untimely fashion; and that even if these procedural barriers are overcome, defendant produced sufficient evidence of misuse both to submit the question to the jury initially and, on the present posture of the case, to preserve the jury's findings intact.

In thoughtful post-trial memoranda and oral argument, the parties have drawn the court's attention to the controlling facts and legal principles in the case. After careful consideration of them, the court has concluded that a new trial of plaintiff's claims against the defendant is justified, principally for the reasons put forward by plaintiff. While the procedural objections raised by defendant are not insubstantial, and raise rather close questions of law and policy, the court concludes that they are defeated by the considerations set forth, in some detail, *post.*

### I. *The Jury's Finding of Product Misuse*

The defendant urges, at the outset, that it is unnecessary to reach the apparent conflict between the jury's finding of both 15% negligence and no breach of warranty in light of its conclusion of fact, in the eighth interrogatory, that plaintiff had im-

---

1. A copy of the verdict and questions, formulated by the court with the parties' assistance, is set out in an appendix.

2. From the start, the court has regarded plaintiff's motion to be for a judgment notwithstanding the verdict, or judgment n.o.v. In a subsequent filing and at oral argument, several months after the motion was originally filed, plaintiff essentially modified the motion by seeking relief, alternatively, in the form of a new trial. Seeking such relief in the alternative is anticipated by the federal rules, Fed.R.Civ.P. 50(b), but a modification of the kind made here could present difficulties if it prejudiced the defendant or violated a particular time limitation. The court does not have to reach the issue, however, because of its ruling, and the grounds for its ruling, set forth, *post*, at 671–672.

3. The Supreme Judicial Court in *Hayes v. Ariens, supra*, did not limit its holding to cases in which the defendant was more negligent than plaintiff or, generally, to cases in which the defendant was negligent to a particular degree. In *Hayes* the defendant was only 40 percent negligent. In this light, the relatively low percentage of defendant's negligence in this case is not a basis for declining to apply the *Hayes v. Ariens* rule.

4. Inadequate proof of the "misuse" defense is relevant only if the first part of plaintiff's argument is correct: that a negative finding as to breach of warranty is also unsustainable. Were the negative finding upheld, there would be no affirmative liability to defend against, and the jury's alleged error regarding "misuse" would be harmless.

properly misused the press.[5] That finding, in defendant's view, bars recovery even if a breach of warranty is also found. There are several problems with defendant's position.

■ First, the jury's answer to the eighth interrogatory was surplusage, neither essential to the jury's conclusions (having previously found no breach of warranty by defendant) nor warranted by the Special Verdict's instructions.[6] The only basis asserted by defendant for relying on the extraneous finding is that it must have reflected the jury's genuine view of the case. That may be correct, and there is little suggestion of egregious confusion in the jury's deliberations.[7] Yet allowing the superfluous finding to govern the case would negate the substantial efforts taken to craft a proper Special Verdict and leave the jury free to roam through the facts of the case at will. A jury's findings are normally controlling on the factual issues presented to it, yet those findings should not govern other issues the jury chooses to address, and certainly not issues it is expressly directed to bypass. *See United States v. Horton,* 5 Cir.1980, 622 F.2d 144, 148 (per curiam) (upholding grant of new trial in part because "jury failed to follow the trial judge's instructions ..."); *McCormick v. City of Wildwood,* D.N.J.1977, 439 F.Supp. 769, 772–74 ("Granting a new trial is the appropriate remedy where the jury's verdict does not comport with the court's

instructions"); *see generally* J. Moore & J. Lucas, 6A *Moore's Federal Practice* ¶ 59.08[4] at 59–111, 59–125 (1986).

■ Even if the jury's finding of "misuse" by the plaintiff is not rejected as mere surplusage, it still does not control the outcome because it is clearly contrary to "the great weight of the evidence" presented at trial. *See, e.g., Coffran v. Hitchcock Clinic, Inc.,* 1 Cir.1982, 683 F.2d 5, 6; 5A *Moore's Federal Practice* ¶ 50.03[2] at 50–36, 50–37. While the court is mindful of the limits on its discretion and the parties' right to have "fairly open" questions resolved by the jury, the result in this case rises to the level of being "seriously erroneous" and a "clear miscarriage of justice." *See Chedd–Angier Production v. Omni Publications, Int.,* 1 Cir.1985, 756 F.2d 930, 934; *Coffran, supra,* at 6; *see generally* 6A *Moore's Federal Practice, supra,* ¶ 59.08[5]. Since the result could not have been reached by a "reasonable jury", *McIsaac v. Didriksen Fishing Corp.,* 1 Cir.1987, 809 F.2d 129, 132, the court orders a new trial on that basis.

On the "misuse" issue, the Supreme Judicial Court has stated that the defendant "must prove that the plaintiff knew of the product's defect and its danger, and that he proceeded voluntarily and unreasonably to use the product and that, as a result, he was injured." *Allen v. Chance Mfg. Co., Inc., supra,* 398 Mass. at 34, 494 N.E.2d 1324. There is a "subjective" component

---

**5.** # 8. When plaintiff was injured, was she acting unreasonably with respect to a product of the defendant and with awareness that said product was defective and dangerous?—Yes.

**6.** After finding against plaintiff on her breach of warranty claim, the jury was expressly instructed, in the sixth interrogatory, to "give no further consideration to plaintiff's claim."

**7.** At the same time, there is an indication that the jury may have reached a "compromise" verdict, which would independently warrant a new trial under some circumstances. Cf. *Burger King Corp. v. Mason,* 11 Cir.1983, 710 F.2d 1480, 1486–87; *U.S. Football League v. National Football League,* S.D.N.Y.1986, 644 F.Supp. 1040, 1049–50. Because the jury was not instructed on the state's modified comparative negligence rule, requiring defendant to be more at fault than plaintiff to be held liable for negligence, it

probably believed that plaintiff would receive 15% of her total damages, found to be $150,000. *See* M.G.L. c. 231, § 85. Irrespective of their merits, affirmative findings of defendant's breach of warranty and plaintiff's misuse, or simply a negative finding as to breach of warranty, would be needed to secure a particular quantitative recovery. The plaintiff has not premised her motion on this argument. Nor did she seek an instruction informing the jury of Massachusetts's rule of comparative negligence—an instruction which we understand to be discretionary. Cf. *Kettinger v. Black & Decker Mfg. Co.,* 1982, 13 Mass.App. 993, 994–95, 432 N.E.2d 736. In any event, evidence of an unwarranted compromise verdict is at best speculative, and we do not rely on that possibility in concluding that a new trial is warranted. Cf. *Mirageas v. Massachusetts Bay Transportation Authority,* 1984, 391 Mass. 815, 817–18, 465 N.E. 2d 232.

of the test—"the plaintiff's actual knowledge and appreciation of the risk"—and an objective element—"the reasonableness of his conduct in the face of the known danger." *Id.* The jury's finding is against the weight of the evidence on each of the elements of the "misuse" test.

As to voluntariness, the only evidence adduced by defendant was that a fellow employee of plaintiff, not her boss, had pointed out a method of operating the press safer than the one she was following at the time. While the advice suggests that plaintiff was aware of potential injury, it does not lessen the possibility of duress or otherwise bear on the issue of volition. The evidence regarding these issues, unrefuted in the record, was that plaintiff's immediate superior, a shop foreman, had ordered her to work on the press in the dangerous manner that led to her injury. She testified, again without refutation or rebuttal, that she saw no realistic choice but to follow the foreman's orders. The option of quitting her job was no doubt available, but it was effectively foreclosed, or at least quite circumscribed. The plaintiff lacked a trade or college degree and had to help support a family. For a woman in her constrained position, commanded to follow a questionable practice but needing her job, the facts strongly rebut voluntariness in the ordinary sense of the word.

The conditions established by her employer also bear on the requirement of reasonableness. It is true, as defendant vigorously contended and demonstrated at trial, that it was an unsound practice to put a hand near the point of operation when a press could inadvertently be activated by a foot pedal; that applicable safety codes proscribed use of the press without tools, safety devices, and warnings, all of which were absent in this case; and that there were feasible alternate methods of preparing the press for operation that would have made it safer. Yet all these considerations point as much, if not more, to the negligence of plaintiff's employer for not guarding the machine, putting up warnings, or supplying proper tools; not to plaintiff's irresponsibility. To be sure, the employer's negligence cannot be attributed to defendant, but it should also not be held against plaintiff. *See Solimene v. B. Grauel & Co., K.G.,* 1987, 399 Mass. 790, 795, 796, 507 N.E.2d 662. As a subordinate, low-paid worker in a metal working shop, she had no authority and virtually no practical control over her working environment. For all intents and purposes, she had to work with the press as it existed, with the tools as provided, and in the manner prescribed by her boss. In this light her actions, albeit hazardous, do not seem unreasonable in retrospect, or outside the compass of possible conduct for which liability is proper. *See Venezia v. Miller Brewing Co.,* 1 Cir.1980, 626 F.2d 188, 190.

Finally, on the matter of subjective knowledge of defect, defendant produced an array of facts at trial and at argument on the instant motion which are not dispositive. Defendant insists that plaintiff was aware of the press's defectiveness and dangerousness because, in her testimony, she conceded that she had worked on or seen some presses in the past which had the point of operation guards or activation devices whose absence was at issue in this case; that she knew it was dangerous to place her hand near the point of operation and thus risk an injury from inadvertent activation; and that she continued using the press in a risky manner despite being generally aware of its danger and of a safer alternative. While all this may be true, it merely shows that she was familiar with somewhat safer methods of operation and perceived the obvious danger of getting a hand tangled in the press. It does not show that she was aware of the impropriety of using a machine without suitable guards or alternate activation devices. In fact, her testimony showed the opposite: that she did not perceive the exceptional hazard of positioning and retrieving metal parts with her hands, unprotected by a safety screen, while activating the press with her foot.

To constitute a complete defense to a breach of warranty, plaintiff must at least have perceived that a safety device is standard equipment or regarded as necessary to safe operation, so that removing it or

using the equipment without the device is dangerous.[8] *See McIsaac v. Didriksen Fishing Corp., supra,* at 133 ("[codefendant] misused the [product] by negligently installing and modifying it, and by continuing to use it after recognizing its unsuitability for use on [its fishing vessel]"). Plaintiff must know that in a particular usage the equipment is defective and dangerous, e.g., using a snowblower with a patently malfunctioning chute, and not simply in the general sense that many products, ranging from a knife to a lawnmower, are hazardous. In this case, defendant showed at best that plaintiff was aware of the overall dangerousness of operating a press and the slightly greater hazard of operating one without guards. But that is no more than any competent adult could have perceived under the circumstances. There was no evidence of the more particularized cognizance of danger and defect required by state law.

For the reasons stated, the court regards the evidence of misuse to be, if not legally insufficient, then at least clearly outweighed by evidence to the contrary. Even if some doubt on this point were to remain, there is a final reason not to dispose of the case on the basis of the jury's finding of misuse in the eighth interrogatory. The plaintiff, as noted, has pointed to a potential conflict in the jury's responses to other interrogatories. The defendant, implicitly, counters with the Seventh Amendment's guarantee of a trial by jury,[9] but the Constitution does not by its express terms or apparent purpose protect every finding of a jury. *Cf. Atlantic Tubing & Rubber Co. v. International Engraving Co.,* 1 Cir.1976, 528 F.2d 1272, 1276. The Court of Appeals, in fact, has ordered a new trial when acceptance of answers to some interrogatories required the trial court to ignore answers to others. *See Saunders v. State of Rhode Island,* 1 Cir. 1984, 731 F.2d 81, 84. Although in *Saunders* the conflict between the different portions of the verdict was more direct, we draw the same conclusion for the instant case: a trial court should not sidestep a possibly serious conflict in a jury's answers to interrogatories by confining its attention to only one portion of a special verdict.[10]

## II. *The Irreconcilability of the Jury's Findings*

The defendant raises a further objection to a new trial, originating in the Constitution. It adverts to the court's obligation, again under the Seventh Amendment, to take a view of the case, "which makes the jury's answers to special interrogatories consistent." 5A *Moore's Federal Practice, supra,* ¶ 49.03[4] at 49–29, 49–31; *see Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.,* 1962, 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798; *Mashpee Tribe v. New Seabury Corp.,* 1 Cir.1979, 592 F.2d 575, 590. While the duty to seek a reconciliation of special verdicts is beyond dispute, e.g., *Insurance Co. of North America v. Musa,* 1 Cir.1986, 785 F.2d 370, 377, the conclusion urged by defendant is not.

---

**8.** Examples that come to mind include a purchaser of a chainsaw who modifies a product for personal use by removing a part or device that he knows would make the saw safer if retained; or a purchaser of an appliance who knowingly overloads an electrical circuit (perhaps despite a warning by the maker) and causes a serious fire.

**9.** "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law." U.S. Const., Amend. 7.

**10.** Defendant also points to the jury's finding in the seventh interrogatory, to the effect that a breach of warranty was not "causally related" to plaintiff's injuries, as support for sustaining the jury's result in this case. In addition to the paucity of evidence for product misuse, described *supra,* defendant's reliance on this interrogatory is flawed for another reason. After finding no breach of warranty in the sixth interrogatory, the jury could not plausibly have found a causal connection between a (nonexistent) breach and plaintiff's injuries in the seventh interrogatory. Since an affirmative finding of causation was, as a practical and logical matter, foreclosed, the jury's actual finding to the contrary does not carry weight for purposes of the instant motion.

In an effort to reconcile the special verdicts, the defendant has put forward quite inventive reasons why the jury might have concluded, in the first interrogatory, that defendant had acted negligently while concluding, in the sixth, that it had not breached an implied warranty of merchantability. For example, it is suggested that the jury may have regarded defendant as liable only insofar as it had negligently failed to post adequate warnings on the press and not in the sense that the product itself, the focus of a warranty claim, was defective or unfit for its ordinary purposes. *See* M.G.L. c. 106, § 2–314(2)(c); *cf. also Back v. Wickes Corp.*, 1978, 375 Mass. 633, 641, 378 N.E.2d 964; *Fahey v. Rockwell Graphic Systems, Inc.*, 1985, 20 Mass.App. 642, 651, 482 N.E. 2d 519. Similarly, defendant has proposed that the jury concluded that defendant may have been negligent in some manner but not to such a degree that its action rose to the level of a breach of warranty. Finally, it suggests that the jury declined to find a breach of warranty because of an alleged "modification" in the press by plaintiff's employer, not because of anything the defendant did or did not do.

▮ Although these or other scenarios may in fact approximate the jury's thinking, the court is not able to accept defendant's contentions. First of all, they are far more resourceful, and subtle, than the theories or evidence presented at trial. Scant evidence or argument was directed to the adequacy of warnings, and what little there was failed to make the "fine distinctions" between theories and degrees of fault suggested now by defendant. *See Atlantic Tubing & Rubber Co., supra*, at 1277. On the question of modification, defendant presented sketchy, and at best speculative, evidence from a manager of the company employing plaintiff; the individual, admittedly, had only a passing familiarity with the press actually operated by plaintiff.

Next, and most important, the conflict in the jury's findings is irreconcilable as a matter of state law. No amount of argument can get around the plain words of the Supreme Judicial Court:

> A defendant in a products liability case in this Commonwealth may be found to have breached its warranty of merchantability without having been negligent, but the reverse is not true. A defendant cannot be found to have been negligent without having breached the warranty of merchantability.

*Hayes v. Ariens Co., supra*, 391 Mass. at 410, 426 N.E.2d 273 (footnote omitted); *see Colas v. Grzegorek*, 7 Cir.1953, 207 F.2d 705, 708 (judgment for defendants vacated and new trial ordered when state law compelled one of two defendants to be negligent as a matter of law). Sitting in diversity, this court lacks the authority to circumvent the clear effect of Massachusetts law, presumed to be controlling throughout this case. *See, e.g., Erie R. Co. v. Tompkins*, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; *cf. Anderson v. Owens–Illinois, Inc.*, 1 Cir.1986, 799 F.2d 1, 3. Defendant's attempt to harmonize the jury's findings fails. The ordinary remedy for irreconcilable verdicts is a new trial. *See Ladnier v. Murray*, 4 Cir.1985, 769 F.2d 195, 198; *Atlantic Tubing & Rubber, supra*, at 1276–77; 5A *Moore's Federal Practice, supra*, ¶ 49.03[4] at 49–31, 49–32.[11]

III. *The Strictures of Rule 49, Fed.R.Civ. P.*

The defendant has uncovered a procedural barrier, however, which if not overcome would preclude a new trial regardless of its merits. The defendant maintains, in particular, that under the Court of Appeals' decision in *Skillin v. Kimball*, 1 Cir.1981, 643 F.2d 19, 19–20, interpreting Rule 49, Fed.R. Civ.P.,[12] plaintiff's failure to "seek to have

---

**11.** *See also Witt v. Norfe, Inc.*, 11 Cir.1984, 725 F.2d 1277, 1279 (*per curiam*) (remanded for a new trial because "it must be deemed inconsistent [under Florida law] for a jury to find that a product was not defective for purposes of strict liability, and yet that the product was negligently designed ...").

**12.** Rule 49. Special Verdicts and Interrogatories

(a) Special Verdicts. The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event the court may submit to the jury written questions susceptible of categorical or other brief answer or may submit written

the matter resubmitted to the jury" amounted to a waiver of its right to challenge the inconsistency of its Special Verdict after trial, i.e., after the jury had disbanded and was no longer available for a clarification of its findings. The argument is not without considerable merit, especially in light of the broadly stated reliance by the Court of Appeals on "the incentives for efficient trial procedure...." *Skillin, supra,* at 20.[13] Nonetheless, the court is not sufficiently swayed by the argument to foreclose post-trial relief, for the reasons set forth *post.*

### A. *Special Verdicts under Rule 49(a)*

It is helpful at the start to distinguish between Rule 49(a) and Rule 49(b) because they govern different sorts of special verdicts and may give rise to different legal results. *See Diamond Shamrock Corp. v. Zinke & Trumbo, Ltd.,* 10 Cir.1986, 791 F.2d 1416, 1430–31 (McKay, J., concurring in part and dissenting in part); *see also*

*Saunders v. State of Rhode Island, supra,* at 83 n. 3. Set forth in the appendix, the Special Verdict in this case comes under the rubric of Rule 49(a). It is in the form of a special written finding upon each issue of fact, as expressly described in the rule's text. Fed.R.Civ.P. 49(a). Moreover, the verdict consists of a series of "questions susceptible of categorical or other brief answers...." *Id.* In short, it had the very features expected of special verdict under Rule 49(a).

Conversely, the special verdict at issue here did not have the distinctive feature of a form of verdict under Rule 49(b): a General Verdict in addition to specific interrogatories. *See, e.g., Bates v. Jean,* 7 Cir. 1984, 745 F.2d 1146, 1149–50. Nowhere on the questionnaire did the court "[ask] the jury to make a finding of ultimate liability...." *Stanton by Brooks v. Astra Pharmaceutical Products,* 3 Cir.1983, 718 F.2d 553, 574. Instead, the court expected to "translate" the jury's findings on con-

---

forms of the several special findings which might properly be made under the pleadings and evidence; or it may use such other method of submitting the issues and requiring the written findings thereon as it deems most appropriate. The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict.

(b) General Verdict Accompanied by Answer to Interrogatories. The court may submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict. The court shall give such explanation or instruction as may be necessary to enable the jury both to make answers to the interrogatories and to render a general verdict, and the court shall direct the jury both to make written answers and to render a general verdict. When the general verdict and the answers are harmonious, the appropriate judgment upon the verdict and answers shall be entered pursuant to Rule 58. When the answers are consistent with each other but one or more is inconsistent with the general verdict, judg-

ment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial. When the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, judgment shall not be entered, but the court shall return the jury for further consideration of its answers and verdict or shall order a new trial.

13. The Court of Appeals held, in relevant part, as follows:

We do not reach the merits ... since appellant did not seek to have the matter [of inconsistent special findings] resubmitted to the jury.... Appellant ... was on notice that the special procedures of Rule 49—with their known potential for inconsistency—were to be the order of the day. With this notice should have come the knowledge that the only efficient time to cure these possible problems of inconsistency would be after the jury announced the results of its deliberations and before it was excused.... To allow a new trial after the objecting party failed to seek a proper remedy at the only possible time would undermine the incentives for efficient trial procedure and would allow the possible misuse of Rule 49 procedures—no evidence of which do we detect in this case—by parties anxious to implant a ground for appeal should the jury's opinion prove distasteful to them.
*Skillin, supra,* at 19–20.

trolling fact issues into a judgment, *see* 5A *Moore's Federal Practice, supra,* ¶ 49.02 at 49–8, thereby avoiding the sort of confusion expressly anticipated by Rule 49(b) and warned against by Judge Brown, one of Rule 49(a)'s most ardent supporters. *See* Brown, "Federal Special Verdicts: The Doubt Eliminator," 1968, 44 F.R.D. 338, 339–40. As a result, there could be no inconsistency with a general verdict such that the court, in Rule 49(b)'s express words, "shall return the jury for further consideration of its answers ..."—a command absent entirely from Rule 49(a).

Finally, that the interrogatories submitted to the jury may have been mixed questions of law and fact, or that they followed a general charge to the jury on the relevant legal rules, does not take them out of the purview of Rule 49 or, more exactly, of Rule 49(a). *See, e.g.,* Brown, *supra,* at 340, & n. 6 (cases cited therein); *Quaker City Gear Works, Inc. v. Skil Corp.,* Fed.Cir.1984, 747 F.2d 1446, 1453; *cf. Merchant v. Ruhle,* 1 Cir.1984, 740 F.2d 86, 89 n. 2; *Kissell v. Westinghouse Elec. Corp., Elevator Div.,* 1 Cir.1966, 367 F.2d 375, 376.[14] When reviewing forms of verdict comparable to the instant one, courts have consistently regarded them as coming under Rule 49(a),[15] and there is no reason for this court to conclude otherwise. *See* Brown, *supra,* at 344–45 (Rule 49(a) special verdicts suited for product liability suits premised "on two or more theories").[16]

### B. *Waiver under Rule 49(a)*

■ Once the case is seen in this procedural context, a waiver of the right to challenge inconsistent answers is not so clear as defendant suggests. The chief reason is that Rule 49(a), unlike Rule 49(b), as noted, makes no specific provision for resubmission of inconsistent answers to the jury for reconciliation. *Cf. Bates v. Jean, supra,* at 1150. Thus, the Court of Appeals' emphasis on the "notice" given to plaintiffs by Rule 49's "special procedures", *Skillin, supra,* at 19, does not apply so clearly to Rule 49(a). In fact, the only mention of resubmission in Rule 49(a) is in the context of "omitted" findings of fact.[17] Certainly the drafters of Rule 49 could have anticipated inconsistent findings too, as they did—and provided for—in Rule 49(b). The absence of a similar provision, or even mention, in 49(a) should not be ignored but, instead, viewed as authorizing a judicial remedy, including the grant of a new trial, if defective findings are returned by the jury and a new trial is deemed appropriate by the court. The result is that Rule 49(a) does not compel a waiver. *See Solimene v. B. Grauel & Co., K.G., supra,* 399 Mass. at 800–01, 507 N.E.2d 662 ("If the [jury's] answers cannot be harmonized with the evidence and instructions, and the jurors ... have been discharged, ... a new trial is required because it is the jurors['] constitutional responsibility to re-

**14.** In fact, Rule 49(a) expressly provides that "[t]he court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue."

**15.** *See, e.g., Ladnier v. Murray,* 4 Cir.1985, 769 F.2d 195, 196, 197; *Bates v. Jean, supra,* at 1149; *Bell v. Mickelsen,* 10 Cir.1983, 710 F.2d 611, 614, 616; *Alverez v. J. Ray McDermott & Co., Inc.,* 5 Cir.1982, 674 F.2d 1037, 1039; *Atlantic Tubing & Rubber Co., supra,* at 1276–77; *Stephenson v. College Misericordia,* M.D.Pa.1974, 376 F.Supp. 1324, 1326 & n. 1, 2; *cf. Merchant v. Ruhle,* 1 Cir.1984, 740 F.2d 86, 89 (absence of "general verdict" and submission of "questions ... in ... comprehensive and conclusory terms ..." takes verdict out of Rule 49(b)); *Diamond Shamrock Corp., supra,* at 1428 & n. 3 (McKay, J.).

**16.** The inclusion of a figure for damages in the ninth interrogatory does not change the analysis. *See, e.g., Fugitt v. Jones,* 5 Cir.1977, 549 F.2d 1001, 1004–05 & n. 3. A calculation of damages cannot be regarded as a general verdict because it had no binding effect until modified by the court in conformity with the state's comparative negligence rule or other applicable legal restraints.

**17.** In the context of inconsistent answers, there is even some dispute over the propriety of resubmitting questions to the jury under Rule 49(a). While the trend is toward liberal resubmission when the answers cannot be reconciled by the court, *see Stanton by Brooks v. Astra Pharmaceutical Products, supra,* at 575–76, the practice may not be proper in all cases, *see Atlantic Tubing & Rubber, supra,* at 1277; *Morrison v. Frito-Lay, Inc.,* 5 Cir.1977, 546 F.2d 154, 160–61, or at all in at least one circuit. *McCollum v. Stahl,* 4 Cir.1978, 579 F.2d 869, 870–72.

solve the facts"). Rule 49(a) allows the trial court to give relief despite a failure to seek resubmission, as the Supreme Judicial Court has recognized in construing Mass.R. Civ.P. 49(a), the analogous state procedural rule. *See id.* at 800, 801 n. 14, 507 N.E.2d 662 ("the procedure under rule 49(b) differs from that under rule 49(a)"). The federal courts interpreting Rule 49(a) directly, even those upholding a waiver under Rule 49(b),[18] have also declined to enforce a strict waiver policy. *See, e.g., Ladnier v. Murray, supra,* at 198 n. 3; *Alverez v. J. Ray McDermott & Co., Inc.,* 5 Cir.1982, 674 F.2d 1037, 1040–41; *see also Stephenson v. College Misericordia,* M.D.Pa.1974, 376 F.Supp. 1324, 1327.[19]

## C. *Rule 49 in light of Skillin*

The defendant nonetheless maintains that the holding of *Skillin v. Kimball, supra,* governs cases under Rule 49(a) as well as Rule 49(b), and thus leaves no choice but to find that plaintiff has waived her right to challenge the jury's answers in this case. Despite the breadth of the Court of Appeals' formulation in *Skillin* (see supra n. 13), reiterated in *McIsaac v. Didriksen Fishing Corp., supra,* at 133, 134, we do not consider defendant's expansive reading to be either necessary or appropriate. Aside from the obvious differences in the text of Rule 49(a) and 49(b) noted *ante,* there are more particular reasons to read *Skillin*'s waiver policy as applying narrowly to Rule 49(b).

First, *Skillin* referred to Rule 49 without differentiating between sections (a) and (b), *see Diamond Shamrock Corp., supra,* at 1430 n. 6 (McKay, J.), and its rule has subsequently been upheld in cases dealing only with Rule 49(b) explicitly. *See Merchant v. Ruhle, supra,* at 89; *Fernandez v. Chardon,* 1 Cir.1982, 681 F.2d 42, 58, *aff'd sub nom. Chardon v. Fumero Soto,* 1983, 462 U.S. 650, 103 S.Ct. 2611, 77 L.Ed.2d 74.[20] Second, all of the cases cited by the Court of Appeals in *Fernandez v. Chardon, supra,* as well as *Skillin* construe Rule 49(b) only.[21] See *Diamond Shamrock Corp., supra,* at 1430 n. 6 (McKay, J.). Lastly, whereas the case law almost uniformly regards a failure to seek

---

**18.** *Compare Mercer v. Long Mfg. N.C., Inc.,* 5 Cir.1982, 671 F.2d 946, 947–48, 948 n. 1 (per curiam) (declining to apply *Skillin* rule to Rule 49(a) cases and finding no waiver) with *Stancill v. McKenzie Tank Lines, Inc.,* 5 Cir.1974, 497 F.2d 529, 534–35 (finding a waiver under Rule 49(b)).

**19.** Two other cases discussing Rule 49(a) do not suggest a contrary result. In *Bates v. Jean, supra,* at 1149–50, the court declined to reach the issue of waiver under Rule 49(a) because even if one might be enforced in another case, it would not be used against a *pro se* litigant. In *Bell v. Mickelsen,* 10 Cir.1983, 710 F.2d 611, 616, the court held narrowly that failure to object to the *form* or wording of a special interrogatory under Rule 49(a) constituted a waiver on that ground for appeal; it did not address the issue of a waiver for failure to resubmit inconsistent answers. *See Diamond Shamrock Corp., supra,* at 1430 n. 6 (McKay, J.).

**20.** The Court of Appeals' recent decision in *McIsaac v. Didriksen Fishing Corp., supra,* did not clarify the intended scope of the *Skillin* rule. As in *Skillin,* it referred generally to Rule 49, without differentiating between its separate provisions, and relied for support on a precedent discussing Rule 49(b), *Merchant v. Ruhle, supra,* at 92, as well as *Skillin* itself. *McIsaac v. Didriksen Fishing Corp., supra,* at 134. Nonetheless, the court's description and analysis of the inconsistent answers (concerning, as here, findings on negligence and breach of warranty) suggested that the special verdict there might possibly be classified under Rule 49(a). Without resolving this ambiguity, we view *McIsaac* as distinguishable because "the ample circumstances portending possible verdict inconsistency", *id.* at 134, in that case were absent from the instant one. In this case, unlike *McIsaac,* counsel for plaintiff did not signify his awareness of potential or actual inconsistency on the record; the jury did not act in a manner demonstrating the likelihood of conflict; and the trial court did not act so clearly in weighing the possibility and implications of inconsistent answers. Finally, while in *McIsaac* "the jury's verdict [was] consistent with the view of the law advanced by [appellant] at trial," *id.* at 134, the answers at issue here were the virtual opposite of the result urged by plaintiff. In sum, although *McIsaac,* like *Skillin,* may be read expansively to control the instant situation, neither the legal holding nor precise factual circumstances of *McIsaac* foreclose the relief ordered in this case.

**21.** *Stancill v. McKenzie Tank Lines, Inc.,* 5 Cir. 1974, 497 F.2d 529, 534–35; *Ludwig v. Marion Laboratories, Inc.,* 8 Cir.1972, 465 F.2d 114, 118; *Barnes v. Brown,* 7 Cir.1970, 430 F.2d 578, 580; *Cundiff v. Washburn,* 7 Cir.1968, 393 F.2d 505, 507.

resubmission of answers as a waiver under Rule 49(b),[22] the other appellate courts commenting on *Skillin* have declined to follow its holding to the extent it would apply to Rule 49(a). *See Ladnier v. Murray, supra,* at 198 n. 5; *Mercer v. Long Mfg. N.C., Inc.,* 5 Cir.1982, 671 F.2d 946, 948 n. 1 (per curiam on petition for rehearing); *see also Bates v. Jean, supra,* at 1150; *Solimene v. B. Grauel & Co., K.G., supra,* 399 Mass. at 800–01, 801 n. 14, 507 N.E.2d 662.

■ Yet even if the *Skillin* rule is deemed to govern verdicts under Rule 49(a), or, alternatively, this is later held to be a case under Rule 49(b), the court is not persuaded that post-trial relief is foreclosed. There are two basic reasons—one more factual in nature, the other, legal. The factual consideration is that in this case, unlike *Skillin* and the leading cases upon which it relied, there was virtually no consideration of the inconsistent special verdicts among the court and the parties when the jury returned its answers. By comparison, in *Cundiff v. Washburn, supra,* at 506, the court expressly pointed out a discrepancy and solicited both counsels' response, and in *Skillin,* the appellant's counsel distinctly noted an apparent conflict but dropped the matter. *See also Stancill v. McKenzie Tank Lines, supra,* at 535; *Ludwig v. Marion Laboratories, supra,* at 118.

The defendant here makes too much of the brief, unfocused colloquy that took place after the jury returned with its findings. The court raised the possibility of a conflict under *Hayes v. Ariens, supra,* but then more or less dismissed it without directly inquiring of plaintiff's counsel. Moreover, only defense counsel responded to the court's tentative inquiry, citing two cases for the proposition that no discrepancy existed. In reality, a conflict did exist, and the two cases mentioned by defense counsel were inapposite.[23] Finally, defendant insists that it was plaintiff's counsel's duty to raise the problem, so that his failure to seek a resubmission—not the court's failure to press the matter—must be controlling. While the court agrees that plaintiff's counsel should have taken firmer steps to protect his client's rights, *see Mercer v. Long Mfg., supra,* at 947, the court also should have moved more decisively. The tardiness of counsel should not extinguish plaintiff's rights when the court did not elicit the views of both counsel directly, or address clearly the problem of inconsistent special findings. *Cf. McIsaac v. Didriksen Fishing Corp., supra,* at 134; *Diamond Shamrock Corp., supra,* at 1419; *Mashpee Tribe, supra,* at 580; *Kirkendoll v. Neustrom,* 10 Cir.1967, 379 F.2d 694, 699; *Tennessee Consolidated Coal Co. v. United Mine Workers,* 6 Cir.1969, 416 F.2d 1192, 1200.

### D. Trial Court's Authority to Order New Trial Sua Sponte

■ Finally, neither the holding in *Skillin* and *McIsaac* nor any of the procedural defects highlighted by defendant should be

---

**22.** In addition to the cases from the Fifth, Seventh, and Eighth Circuits cited in *Skillin* and *Fernandez,* courts in the Second, Sixth, and Tenth Circuits as well have upheld a waiver under Rule 49(b). *Diamond Shamrock Corp.,* 10 Cir.1986, *supra,* at 1423; *Haskall v. Kaman Corp.,* 2 Cir.1984, 743 F.2d 113, 123; *Tennessee Consolidated Coal Co. v. United Mine Workers,* 6 Cir.1969, 416 F.2d 1192, 1200; *but see Cone v. Beneficial Standard Life Insurance Co.,* 8 Cir. 1968, 388 F.2d 456, 460 (motion for new trial preserved appeal as to alleged inconsistency with a general verdict under Rule 49(b)). The Eleventh Circuit's decision in *Itel Capital Corp. v. Cups Coal Co., Inc.,* 11 Cir.1983, 707 F.2d 1253, 1261, like the decision in *Skillin,* upheld a waiver but failed to distinguish between Rule 49(a) and Rule 49(b).

**23.** Defendant's counsel pointed to a footnote, apparently footnote 2, in *Allen v. Chance Mfg. Co., supra,* 398 Mass. at 36 n. 2, 494 N.E.2d 1324, and to *Richard v. American Mfg. Co., Inc.,* 1986, 21 Mass.App. 967, 967–68, 489 N.E.2d 214, to support the proposition that the jury could find defendant negligent but not in breach of an implied warranty. The cases stand for no such proposition. Rather, they show that a defendant could be found negligent but not ultimately *liable* for a breach of warranty, since defenses to the two causes of action are different. *See McIsaac v. Didriksen Fishing Corp., supra,* at 133. The cases did not overrule *Hayes v. Ariens, supra,* as to the necessary connection between a finding of negligence and a finding of breach of warranty.

construed as withdrawing the trial court's authority *sua sponte* to order a new trial. As the court held in *Cundiff v. Washburn, supra,* at 507, a case cited favorably in *Skillin,* "[o]ur interpretation of Rule 49(b), in the absence of objection by counsel, leaves to the trial court alone the discretion to choose the means of correcting inconsistency...." In fact, all of the cases cited *ante* (see supra notes 20, 21) in support of the *Skillin* rule were appellate decisions upholding the district court's entry of judgment or denial of a motion for new trial. None of them reversed a lower court for ordering a new trial because of an irreconcilable conflict in special findings. *See Diamond Shamrock Corp., supra,* at 1430 n. 5 (McKay, J.). *Skillin* as well should not be construed as narrowly confining, *sub silentio,* a trial court's long-standing discretion.

Judges have differed over the procedural grounding for the court's grant of a new trial on its own initiative. *Compare Diamond Shamrock, supra,* at 1423 ("the trial court could have, *sua sponte,* granted ... a new trial pursuant to Rule 50(b)") *with id.* at 1430 n. 5 (McKay, J.) ("application of the 'waiver rule' ... impinges on the trial court's broad discretion under Rule 59(d) to grant a new trial *sua sponte*"). But the trial court's discretion to order a new trial in the interest of justice, whatever its precise grounding, is not disputed. *See generally* 6A *Moore's Federal Practice, supra,* ¶ 59.08[4] at 59–127, 59–128. As the Court

of Appeals, alluding to Rule 59, Fed.R. Civ.P., has stated,

> [a] federal trial court has broad discretion to refuse to accept a general verdict and to order a new trial when it believes that the ends of justice so require. [Citations omitted.] This discretion encompasses the power to refuse to accept a jury's answers to special interrogatories.

*Atlantic Tubing & Rubber Co., supra,* at 1276; *see also Cone v. Beneficial Standard Life Ins. Co., supra,* at 460 ("If the verdict is perverse because of inconsistency with special findings, a new trial may be ordered"). The court regards Rule 59(d), Fed.R.Civ.P., as proper authority,[24] yet does not regard Rule 50(b) as markedly less supportive of the court's grant of a new trial.[25]

## IV. *Timeliness of Relief*

■ The final objection to a new trial may be disposed of more simply. The defendant suggests that in view of the more than six months that have now elapsed between the jury's return of a verdict and the award of relief, a new trial would be untimely. The contention does not survive close scrutiny. First, plaintiff filed her motion for post-judgment relief five days after the close of trial, plainly within the ten days provided in Rule 50(b) and Rule 59(b), Fed.R.Civ.P. Second, at the request of plaintiff's counsel, the court withheld entry of judgment in the expectation of promptly receiving and deciding plaintiff's motion. The motion, as noted, was submitted promptly, yet due to an unforeseeable, and

---

**24.** Another possible ground for ordering a new trial is Rule 49(b) itself (assuming it governs this case), because it provides for "a new trial" as well as resubmission to the jury in the event of inconsistency between special findings and the general verdict. When a party has failed to move for resubmission before the jury disbanded, at least one court has concluded that the option of a new trial is foreclosed. *See U.S. Football League v. National Football League,* S.D. N.Y.1986, 644 F.Supp. 1040, 1049 n. 8. The Court of Appeals has suggested, however, under somewhat different circumstances, that a trial court must act to resolve a conflict-ridden verdict irrespective of its cause. *See Saunders v. State of R.I., supra,* at 84.

**25.** The difficulty in relying on Rule 50(b) is that plaintiff's original motion for entry of judg-

ment, basically for a judgment n.o.v., was not clearly preceded by a motion for directed verdict, a "strict" prerequisite under the federal rules. *See, e.g., Javelin Inv., S.A. v. Municipality of Ponce,* 1 Cir.1981, 645 F.2d 92, 94. The absence of a motion for directed verdict is not dispositive however, because, in practical terms, plaintiff has sought the alternate relief of a new trial (see supra n. 2), which is provided for in Rule 50(b) but not limited by the same strict prerequisite. In addition, plaintiff's opposition to defendant's "misuse" defense, expressed in a colloquy with the court regarding instructions to the jury, may be equivalent to a motion for a directed verdict, especially given the practice of liberally construing the types of actions satisfying Rule 50(b)'s strict requirements. *See* 5A *Moore's Federal Practice, supra,* ¶ 50.08 at 50–77.

for more than a month incapacitating, accident, the court was unable to address the questions presented for several months. In that time, no judgment had been entered, and no relief had been foreclosed. It was not until January, soon after the court resumed sitting, that it issued a procedural order calling for additional briefs and oral argument. Thus any dilatoriness, or a resulting objection based on untimeliness, should not be held against plaintiff. The delay in resolving the matter was completely outside her control.

### Conclusion

For the reasons stated, the court orders a new trial of plaintiff's claims of negligence and breach of an implied warranty of merchantability against defendant.[26] The court will issue orders in the near future or direct the Deputy Clerk, Mr. Moynahan, to communicate with the parties in regard to scheduling a new trial at the earliest practicable time.

### APPENDIX

### VERDICT AND QUESTIONS TO BE ANSWERED BY THE JURY

### NEGLIGENCE

1. Was the defendant negligent?

    YES _✓_         NO _____

If No, give no further consideration to plaintiff's negligence claim.

2. Was the defendant's negligence causally related to plaintiff's injuries?

    YES _✓_         NO _____

If No, give no further consideration to plaintiff's negligence claim.

3. Was the plaintiff negligent?

    YES _✓_         NO _____

4. If Yes, was her negligence causally related to her injuries?

    YES _✓_         NO _____

5. If previous four answers are Yes, indicate in percentages the degree to which the causal negligence of each party contributed to the plaintiff's injuries, making sure that the total percentage is 100%.

| Defendant | 15% |
|---|---|
| Plaintiff | 85% |

### BREACH OF IMPLIED WARRANTY

6. Did the defendant breach an implied warranty of merchantability?

    YES _____         NO _✓_

If No, give no further consideration to plaintiff's claim for breach of implied warranty.

7. Was defendant's breach of an implied warranty of merchantability causally related to the plaintiff's injuries?

    YES _____         NO _✓_

If No, give no further consideration to plaintiff's claim for breach of implied warranty.

8. When plaintiff was injured, was she acting unreasonably with respect to a product of the defendant and with awareness that said product was defective and dangerous?

    YES _✓_         NO _____

If Yes, give no further consideration to plaintiff's claim for breach of implied warranty.

### DAMAGES

9. What are the plaintiff's total damages in a dollar amount?

    $150,000.00

Date: ___11/7/86___    _____
                              Foreperson

**26.** The court has considered the feasibility of limiting a new trial to particular issues, such as the question of "misuse". Though an efficient and proper course at times, *see generally* 6A *Moore's Federal Practice, supra,* ¶ 59.06, it is not proper here where the conflicting verdicts were irreconcilable under state law and none of the material issues was readily severable from the others.