KATHY ROBERTSON, Adm'x of the Estate of Thomas L. Robertson, Deceased, Plaintiff-Appellee, *v.* GENERAL TIRE AND RUBBER COMPANY, Defendant-Appellant.

Fifth District   No. 82—437

Opinion filed March 27, 1984.

12

Mitchell & Armstrong, Ltd., of Marion (J.C. Mitchell, of counsel), for appellant.

Harris, Lambert and Wilson, of Marion, for appellee.

PRESIDING JUSTICE WELCH delivered the opinion of the court:

Thomas L. Robertson, 25, an employee of the Peabody Coal Company, was killed at about 5:10 a.m. on May 14, 1974, as he replaced lug bolts on the wheel of a machine known as a Galis Model 3500 Twin-Boom Roof Drill. The accident report, filed by Charles E. Luxmore, a Federal coal mine inspector, and introduced as an exhibit at trial, stated that when the lug bolts were cut off, the wheel rim separated violently, striking Robertson in the chest, killing him instantly.

The wheels of the roof drill machine consisted of two halves held together by five retaining bolts. These retaining bolts held the split wheel assembly together. The wheels were designed to be secured to the hub of the axle on the machine by 10 lug bolts. A co-worker testified at trial that at the time of his death, Robertson was using a cutting torch to burn loose the lug bolts that hold the wheel to the hub.

The Federal inspector noted in his report that three of the five retaining bolts were damaged and ineffective and this condition could not have been determined by visual inspection. The inspector concluded that failure to deflate the tire before removing the lug bolts and failure by management to instruct Robertson on safe procedures for removing retaining bolts from split rim wheel assemblies were the causes of the accident. He stated that the heat applied by the cutting torch increased air pressure in the tire, contributing to the violence of the separation of the wheel rim.

Kathy Robertson, administratrix of her husband's estate, brought a wrongful death action in the circuit court of Williamson County. The defendant, General Tire and Rubber Company, is the successor corporation to the original manufacturer of the machine. At trial, plaintiff's expert metallurgist testified that two and possibly three of the five retaining bolts had been partially fractured prior to the explosion. It was plaintiff's theory of the case that the existing cracks in the retaining bolts were a hidden defect, resulting from negligent design. Plaintiff further alleged, in an amended complaint, that the manufacturer had a duty to instruct Robertson to deflate the tire before removing the lug bolts and a duty to warn him of the danger if he failed to do so. Plaintiff's expert mechanical engineer testified that another available wheel design, a lock ring rim wheel, would have eliminated this design defect. Defendant's witnesses disagreed. The defendant argued that the accident was caused by Robertson in using the torch to cut the lug bolts off, increasing the air pressure with the heat and causing the tire to fail. After a jury trial, judgment was entered on November 10, 1981, in favor of the plaintiff in the amount of $500,000. Although the jury found in favor of the plaintiff on count II, the negligence count, the jury found in favor of the defendant on count I, the strict liability count. Defendant appeals, raising numerous contentions, which we will address in turn.

The defendant's first argument is that it was entitled to a directed verdict, or a judgment *n.o.v.*, against the plaintiff, for three reasons. It asserts that evidence did not show a design defect in the roof bolter but merely bad maintenance; evidence did not show breach of a duty to instruct or warn since the deceased's employer knew about the danger involved; and the evidence did not show proximate cause because the deceased's improper maintenance of the machine made the explosion unforeseeable.

Directed verdicts and judgments *n.o.v.* are proper "only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no

14

contrary verdict based on that evidence could ever stand." (*Pedrick v. Peoria & Eastern R.R. Co.* (1977), 37 Ill. 2d 494, 509-10, 229 N.E.2d 504, 513.) *Pedrick* emphasizes that the parties have a right to have substantial factual disputes resolved by the jury. *Pedrick v. Peoria & Eastern R.R. Co.; Sunseri v. Puccia* (1981), 97 Ill. App. 3d 488, 422 N.E.2d 925.

■ Applying the *Pedrick* standard, we hold that the defendant was not entitled to a directed verdict or a judgment *n.o.v.* Although the defendant mentions several aspects of the evidence which tend to support its theory of the case, this is not enough to satisfy the *Pedrick* test. The defendant discounts the value of much testimony in favor of the plaintiff, when the very existence of this testimony is reason for the case to go to the jury.

Evidence establishing a design defect included the testimony of George Forman, a professor of mechanical engineering at the University of Kansas. Professor Forman testified, in part:

"I believe the defect is that the design configuration, the arrangement of the design makes it possible to disassemble the wheel with the tire still inflated. There are designs that have been known for many years in which it is mandatory, necessary to deflate the tire prior to disassembling the wheel."

Professor Forman added that the wheel should have been designed so it was impossible to take the two halves of it apart without first deflating the tire. In the case at bar, he stated that it was foreseeable that the bolts would break. A wheel design known as a snap ring design was available when the machine in the case at bar was purchased. In such a wheel, a ring is held in place by air pressure and cannot be removed while the tire is inflated.

In addition, Professor Forman testified that labels or warnings should have been present on the machine, stating that air pressure must be released to avoid an accident. As the machine design existed, the similarity of the lug bolt configuration to an automobile wheel encouraged the workman to believe that he should remove the wheel as an automobile wheel is removed. The extensive testimony of this experienced mechanical engineer, along with all the other evidence presented by the plaintiff, provided enough evidence for the issue of the existence of a duty and the issue of foreseeability to go to the jury.

■ Defendant also asserts that the jury verdict was against the manifest weight of the evidence. We disagree. Evidence adduced at trial showed that two or three of the retaining bolts were deteriorated and ineffective, according to plaintiff's metallurgist. Defendant's plant manager testified there were no markings of any kind on

the wheel or tire indicating how air was to be put into the tire. Professor Forman testified that the design allowing the wheel to be disassembled while the tire was still inflated was more dangerous than the snap ring design. He further testified that labels or warnings should have been present. The fact that the jury chose not to believe the defense theory that Robertson caused the accident by using the cutting torch does not mean the verdict was against the manifest weight of the evidence. A jury verdict may not be set aside merely because the jury could have drawn different inferences from the evidence. *Parker v. De Witt County Housing Authority* (1978), 57 Ill. App. 3d 973, 373 N.E.2d 680.

Next the defendant contends that the jury's verdicts in its favor on the strict liability count and in favor of the plaintiff on the negligence count are so inconsistent as to require a new trial. The defendant reasons that the allegations of defect in each count are identical, therefore the jury's decisions are fatally inconsistent. The defendant's reasoning is not necessarily correct. In any case with alternate theories of liability, jury instructions are parallel to an extent. However, the instructions contain no restriction on the jury's power to choose either theory as a basis of liability. See generally *Hasson v. Ford Motor Co.* (1977), 19 Cal. 3d 530, 564 P.2d 857, 138 Cal. Rptr. 705.

More important to the resolution of this issue is plaintiff's argument that the jury received incorrect instructions on the strict liability count. Defendant's instruction No. 7 (non-IPI) provided as follows:

"One who supplies directly or through a third person a product for another to use is subject to liability to those whom the supplier should expect to use the product with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the produce [*sic*] in a manner for which and by a person for whose use it is supplied, if the supplier,

(a) knows or has reason to know that the product is or is likely to be dangerous for which [*sic*] it is supplied, and

(b) has no reason to believe that those for whose use the product is supplied will realize its dangerous condition."

This instruction was allowed by the trial court, pursuant to *Woodill v. Parke Davis & Co.* (1980), 79 Ill. 2d 26, 402 N.E.2d 194. While deliberating the jury sent a note out inquiring of this instruction: "Is this the law of the first count [*sic*]. And if so, do we have to agree with both a & b to find someone guilty of it [*sic*]." The court replied, "This instruction applies to Count I. I cannot respond further to your question." Plaintiff argues on appeal that the instruction was erroneous in

imposing a knowledge requirement on the strict liability count and the jury's note shows reliance on the erroneous instruction.

In *Woodill*, the supreme court held that a knowledge requirement is a proper limitation to place on strict tort liability when the case is predicated on a failure to warn of danger inherent in the product. Specifically, once it is established that knowledge existed in an industry of a dangerous propensity of the product, plaintiff must show that the defendant did not warn of the danger in an adequate manner. The *Woodill* court reasoned that a manufacturer could not be held liable for failure to warn of a danger which it would be impossible to know based on existing knowledge. However, the court expressly refused to decide whether it is necessary to allege knowledge where liability is predicated on defective design. *Woodill v. Parke Davis & Co.* (1980), 79 Ill. 2d 26, 37, 402 N.E.2d 194, 199.

In the case at bar, a major portion of the plaintiff's case pertained to defective design. The instruction, as given to the jury, related the law of *Woodill* in an overly broad manner. The court's subsequent note to the jury failed to resolve the jury's misapprehension of the law. *Woodill*, by its own terms, did not undercut the holding of *Cunningham v. MacNeal Memorial Hospital* (1970), 47 Ill. 2d 443, 266 N.E.2d 897, that an inability of the defendant to discover a dangerous condition in the product is not a defense. *Woodill v. Parke Davis & Co.*

Because the verdict rendered on count I was based on erroneous law, we hold that the judgment entered on that verdict should be reversed and the case remanded for a new trial on that count only. Defendant argues in its reply brief that because confusion existed over the jury instructions, a new trial is required on both counts. We disagree. There was no finding by the jury in count I that the product was not defective. In addition, the record does not indicate that the jury was confused or misled by the instructions concerning negligence. Accordingly, we find no reason to remand count II for further deliberation in the trial court.

In the next argument raised by the defendant, it asserts that it was error for the trial court to sustain plaintiff's motion to strike affirmative defense No. 2 of defendant's answer. This defense alleged that the contributory fault or negligence of the employer, Peabody Coal Company was the sole cause or a contributing proximate cause of the death of Thomas L. Robertson. Defendant relies on the Illinois Supreme Court's decision in *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886. However, in *Coney v. J. L. G. Industries, Inc.* (1983), 97 Ill. 2d 104, 454 N.E.2d 197, the supreme court stated that the adop-

tion of Illinois of comparative negligence in *Alvis* did not change the longstanding rule of joint and several liability. Therefore, the defense that a nonparty to the instant litigation was liable for negligence was properly rejected. (*Cornell v. Langland* (1982), 109 Ill. App. 3d 472, 440 N.E.2d 985.) This result is not unfair to the defendant since the recourse of a third-party action is available. See generally *Maxfield v. Simmons* (1982), 107 Ill. App. 3d 341, 347, 437 N.E.2d 839, 843 (Welch, J., dissenting), *rev'd* (1983), 96 Ill. 2d 81, 449 N.E.2d 110.

We are also unpersuaded by other myriad arguments raised by the defendant. Although defense counsel insists that no evidence supported jury instructions on negligent design, construction and warning, we have found ample testimony supporting these instructions. While the defense asserts that the trial court erred in telling the jury that defendant's instruction No. 7, discussed above, applies to count I, we do not deem this communication reversible error concerning the negligence count. Although the remark by the court was erroneous concerning count I, the defendant was not prejudiced with reference to count II and no new trial is warranted on count II.

■■ In addition, denial of defendant's instruction No. 9 did not constitute reversible error, despite defense contentions to the contrary. The instruction stated:

"There is no duty upon the manufacturer of the roof bolting machine to manufacture the product with a different design, if the different design is not feasible. Feasibility includes not only elements of capability of obtaining [*sic*], economy, effectiveness and practicality, but also technological possibilities under the state of the manufacturing art at the time the product was produced."

Although this instruction accurately states the law of products liability (*Kerns v. Engelke* (1979), 76 Ill. 2d 154, 390 N.E.2d 859), we find that the trial court's refusal to allow it did not affect the jury's verdict on count II. Defendant has cited no authority which establishes that feasibility jury instructions are required in negligence cases in addition to instructions on the elements of negligence. Accordingly, we hold that denial of this instruction does not necessitate a new trial on the negligence count.

■■ Likewise, we reject defendant's argument that the trial court erred in refusing the defendant's special interrogatory: "Was the negligence of the Plaintiff's decedent the only proximate cause of the Plaintiff's damages other than the negligence of persons who are not a named Defendant in this suit?" After plaintiff's counsel objected to the language about other persons not named in this suit, the trial

court rejected the interrogatory as possibly misleading. The court granted defense counsel leave to amend his interrogatory to avoid confusion. Since interrogatories should not be misleading, confusing or ambiguous (*Gronlund v. Forsman* (1906), 124 Ill. App. 362), and since counsel was given the opportunity to clarify his interrogatory, we find no error on the part of the trial court.

■ Finally, we reject defendant's contention that the trial court erred in allowing plaintiff's instruction No. 18. The instruction stated:

> "As to Count II, if the pecuniary loss sustained by the widow and daughter of Thomas L. Robertson were proximately caused in whole or in part by the negligence of the defendant, then that defendant shall be liable in damages to the plaintiff. Contributory negligence on the part of Thomas L. Robertson shall not bar a recovery, but the damages shall be diminished in proportion to the amount of negligence attributable to Thomas L. Robertson."

The defendant contends this instruction is in error because it tells the jury to compare Robertson's negligence only with that of the defendant, without making mention of any negligence by Peabody Coal Company. However, as we have already noted, a judgment need not be reduced because of the negligence of other persons outside of the litigation.

After reading the record on appeal and examining the arguments of the parties, we have concluded that no errors were committed which require a new trial on count II, the negligence count. The jury's verdict on that count was fully supported by the extensive evidence presented and nothing in the record indicates a new trial is necessary. In reference to count I, the strict liability count, we find that the jury was erroneously instructed. Therefore, the judgment on count I is reversed and this cause remanded for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, remanded.

KARNS and KASSERMAN, JJ., concur.