**Paul H. ALLEN, Plaintiff, Appellee,**

v.

**CHANCE MANUFACTURING CO., INC., Defendant, Appellant.**

**No. 88–1536.**

United States Court of Appeals, First Circuit.

Heard Feb. 7, 1989.

Decided April 28, 1989.

Michael B. Bogdanow with whom James F. Meehan, Cynthia J. Cohen and Meehan, Boyle & Cohen, P.C., Boston, Mass., were on brief, for defendant, appellant.

Alan L. Cantor with whom Fredric A. Swartz, and Swartz & Swartz, Boston, Mass., were on brief, for plaintiff, appellee.

Before CAMPBELL, Chief Judge, and COFFIN, Senior Circuit Judge, and TORRUELLA, Circuit Judge.

LEVIN H. CAMPBELL, Chief Judge.

On a summer night in 1978, Paul Allen was dismantling the Skydiver, an amusement park ride that resembled a Ferris wheel. Allen, then 20 years old, was employed by Dean & Flynn Fiesta Shows, an amusement park that traveled from place to place. As part of the disassembly process, Allen had to secure the motor to the frame of the ride. The motor had to be attached to the frame by placing a metal pin through a hole in the motor bracket and a hole mounted on the frame. As he had many times before, Allen struck the pin with a metal hammer. Fragments of the pin apparently shattered and flew into both of Allen's eyes. He was not wearing safety glasses. Allen permanently lost the sight of his right eye, and his left eye was seriously injured.

Following the accident, Allen brought suit in district court against Chance Manufacturing Company ("Chance"), manufacturer of the Skydiver, claiming negligence and breach of implied warranty of merchantability.[1] Allen alleged that the pins were negligently and defectively designed and manufactured by Chance and that Chance failed to provide adequate warnings—in particular, about the need to wear safety glasses when hammering the pins. Because the accident took place in Massachusetts, it is agreed that Massachusetts law governs.

---

1. Allen, a Massachusetts resident, sued Chance, a Kansas corporation, under the district court's diversity jurisdiction. Sherry Allen was originally named in the complaint as a co-plaintiff, suing for the loss of her husband's consortium. Her suit was voluntarily dismissed when plaintiff's attorney discovered that Sherry Allen had not been married to Paul Allen at the time of the accident.

At trial, Allen presented the expert opinion of a metallurgist that the pins were defectively designed and manufactured, in a way that made them likely to shatter. Allen's evidence also indicated that although the manufacturer's manual cautioned that workers should wear safety glasses while working on the Skydiver, there was no such warning affixed to the ride itself. In addition, witnesses testified that Chance representatives had been on hand on one or more occasions while amusement park workers who were not wearing safety glasses disassembled rides. The testimony was that the Chance people had not warned these workers to put on safety glasses.

Chance defended on two fronts. First, it put on its own expert metallurgical testimony, to the effect that the pins were not defectively designed or manufactured. Second, it suggested that its warnings *were* adequate, and that Paul Allen should have known to wear safety glasses. Chance pointed to Allen's own testimony that while hammering pins on previous occasions, he had frequently been struck in the hands and arms by metal chips. As a result, Chance argued, Allen should have been well aware of the danger. The amusement park had an ample supply of safety glasses, although it did not require their use. Chance argued that if Allen had worn the safety glasses, the injury would not have occurred.

At the close of trial, the jury found for Allen on both the negligence and the warranty claims. The jury indicated on a special verdict form that Chance had not been negligent in its warnings, but that its warnings (or lack thereof) had violated the implied warranty of merchantability.[2] The jury also found that Chance was negligent, as well as in breach of its warranty, with respect to the design and manufacture of the pins. Chance's negligence and breaches, the jury found, proximately caused Allen's injury. The jury found that Allen's own negligence was 25 percent responsible for his injury. Finally, the jury fixed compensatory damages at $1 million. If Chance had been liable only on the negligence claim, Allen's recovery would have been reduced by 25 percent, under the Massachusetts comparative negligence statute, Mass.Gen.Laws ch. 231, § 85 (1986). But because Chance was also liable for the breach of warranty, the award was not reduced. *See Correia v. Firestone Tire & Rubber Co.*, 388 Mass. 342, 353–57, 446 N.E.2d 1033, 1039–41 (1983) (a plaintiff's contributory negligence is not generally relevant to a breach of warranty claim).

Following the verdict, Chance moved for a judgment notwithstanding the verdict or, in the alternative, for a new trial. After a lengthy period—during which, as will be discussed in Part II below, the district court certified a question of state law to the Massachusetts Supreme Judicial Court and awaited and finally received the court's answer, 398 Mass. 32, 494 N.E.2d 1324, —the district court denied these motions. Chance now appeals on two grounds from the denial of its motion for a new trial. First, Chance contends that the district court erred when it refused to instruct the jury—and to let Chance argue to the jury in its closing argument—that if Allen's *employer's* negligence, or some combination

---

**2.** This result is not technically inconsistent. Under Massachusetts law, a product manufacturer's warranty liability is akin to strict liability. *See, e.g., Colter v. Barber–Greene Co.*, 403 Mass. 50, 61–62, 525 N.E.2d 1305, 1313 (1988). The manufacturer is thus held to a higher standard under the warranty than under the negligence claim. Under the warranty theory, the manufacturer is liable for harm done by a product that is not suitable for its foreseeable uses, even if the manufacturer's conduct was neither careless nor unreasonable. Unsuitability may involve incomplete and inadequate warnings and instructions to the user. *See Hayes v. Ariens Co.*, 391 Mass. 407, 413, 462 N.E.2d 273, 277

(1984) (citing *Casagrande v. F.W. Woolworth Co.*, 340 Mass. 552, 555, 165 N.E.2d 109, 111 (1960)). Thus here the jury could conceivably have reasoned that, although the manufacturer was not unreasonable and hence was not negligent in the warning provided, the warnings were still insufficient to render the product suitable for its foreseeable use. While a finding of breach of warranty does not necessarily imply a finding of negligence, the converse is not so. That is, a finding of negligence by the manufacturer does imply that there was also a breach of warranty. *See Hayes v. Ariens Co.*, 391 Mass. at 410, 462 N.E.2d at 275.

of the employer's and Allen's own negligence, was the sole proximate cause of Allen's injury, then Chance could not be held liable. Second, Chance argues that the district court erred when it refused to instruct the jury that if it found that Allen had unreasonably misused the pins, in the knowledge that it was dangerous to do so, then Chance could not be found liable under the warranty theory.[3]

We agree with Chance's "sole proximate cause" argument, and remand for a new trial. In light of this conclusion we need not decide the applicability of the "knowing and unreasonable use" defense, which we nevertheless discuss in Part II.

## I. THE "SOLE PROXIMATE CAUSE" ISSUE

Allen's employer, Dean & Flynn Fiesta Shows—the proprietor of the amusement park—was, understandably, not a party to this case. *See* Mass.Gen.Laws ch. 152, §§ 23, 24 (1986) (employee eligible for Workers' Compensation may not sue employer). Under the Massachusetts comparative negligence law, Mass.Gen.Laws ch. 231, § 85 (1986), a jury must apportion negligence between only the plaintiff and the defendant; the fault of non-parties like the employer is not to be taken into account. *See Correia*, 388 Mass. at 346–52, 446 N.E.2d at 1035–38. Warranty liability, similarly, is not ordinarily affected by non-parties' negligence.

It is also clear, however, that a defendant can be held liable for a tort only if its conduct or product was a proximate cause of the injury. Thus, a defendant is relieved from all liability if it can show that the injury was legally caused in its entirety by *other* persons or entities—that is, that the sole proximate cause of the injury was

elsewhere, and not in the defendant. The Massachusetts Supreme Judicial Court recognized this possibility in *Correia*, when it noted that the negligence of a non-party can be taken into account when the "[non-party's] negligence, either standing alone or combined with the negligence of [the plaintiff's decedent], was the sole proximate cause of [decedent's] injuries." *Correia*, 388 Mass. at 352, 446 N.E.2d at 1039. *See also In re Massachusetts Asbestos Cases*, 639 F.Supp. 1, 1 (D.Mass.1985) (following *Correia*). On the authority of *Correia*, Chance requested the following jury instruction:

> If you find that the conduct of someone other than Chance Manufacturing Co. was the sole proximate cause of the plaintiff's accident, then you must return a verdict for Chance Manufacturing Co. This conduct may be the negligence of Dean & Flynn Fiesta Shows [Allen's employer], and/or negligence of the plaintiff.[4]

The district court declined to give such an instruction, and Chance made a timely objection. In addition, the district court ordered Chance not to argue the employer's negligence in its closing argument to the jury. The court stated: "I won't permit you to argue that. If you do, I will interrupt you." The court based this order on its view that no evidence of the employer's negligence had been presented. After the court had informed defense counsel that he could not argue that the employer's negligence proximately caused the accident, the following discussion took place between the court and counsel:

> THE COURT: Where is the evidence of negligence on the part of the employer?

> If you find that negligence of Dean & Flynn Fiesta Shows, either standing alone or combined with negligence of the [plaintiff was the sole proximate cause of the] plaintiff's injuries, then you must enter a verdict in favor of Chance Manufacturing Co.

The phrase enclosed in brackets was, presumably through inadvertence, omitted from the request.

---

**3.** The "knowing and unreasonable use" defense is sometimes referred to as the *"Correia* defense," because it was first described by the Supreme Judicial Court in *Correia v. Firestone Tire & Rubber*, 388 Mass. at 354–56, 446 N.E.2d at 1040. As discussed in Part I, the "sole proximate cause" argument also has its origins in *Correia.*

**4.** Chance also requested the following version of the same instruction, again relying on *Correia:*

MR. PIERCE [Chance's counsel]: Well, the ride superintendent, he believed that everybody should be wearing safety glasses.

THE COURT: So what? And if the workers didn't, where is the evidence that he didn't tell them every morning. There is no evidence that he didn't tell them every morning.

MR. PIERCE: The evidence elicited by Mr. Swartz [Allen's counsel] was that there was no policy at Dean & Flynn regarding the wearing of safety glasses.

THE COURT: I don't recall that evidence.

MR. SWARTZ: I don't either.

THE COURT: I don't recall such evidence. I recall the evidence coming out that there were—I mean, from his own witness, as a matter of fact, the guy said that he thought that they should wear glasses. But the bottom line was it's hard to get them to do it because they're awkward to put on. They're awkward to work with.

MR. PIERCE: Just so I am clear, your ruling is that I may not argue employer negligence to the jury?

THE COURT: Yes, because I don't think there was any evidence of employer negligence.

The court's—and plaintiff's counsel's—memory of the evidence was faulty. Raymond LaCourse was the ride superintendent for the employer, Dean & Flynn, responsible (by his own testimony) for supervising "all the rides and all the men." LaCourse testified that he had read the Skydiver manual and had seen the warning that safety glasses should be worn. He added that he knew, even without being told by the manufacturer, that safety glasses should be worn while hammering pins. But despite his knowledge that safety glasses should be worn, LaCourse testified that Dean & Flynn had no policy of requiring their use. The following exchange took place between Allen's counsel and LaCourse:

Q It was up to each ride man to decide whether or not he was going to use safety glasses, wasn't it?

A Right.

Q And you didn't have any policy about who should use them, did you?

A No, because you didn't know which way one man was going to work a certain specified time.

Q And each man got a helmet, right?

A Each man did get a helmet, right.

Q But each man didn't get glasses, did he?

A No, because there wasn't that many that you need on the show.

Plaintiff Allen confirmed in his own testimony that his employer never issued safety glasses to him. At another point, Chance's counsel and LaCourse had the following exchange:

Q So it's up to each rideman then? It's his own individual responsibility as to when he needs this eye protection, correct?

A His eyes, right.

Not only did the evidence indicate that the employer had no policy of requiring safety glasses, but there was testimony that might even have implied that the employer discouraged their use. LaCourse testified that many of the ride workers "just didn't wear [safety glasses] because they were a nuisance. They couldn't work with them." He explained that

If a man's up in the air and he was pinning it—right?—they didn't want to come down and get the glasses.... They didn't all want to, after all, say, "Gee, my shoelace is untied. I got to climb down to tie it."

A juror might have inferred from these comments that LaCourse himself—even though he knew that safety glasses should be worn while hammering—held the view that the glasses were "a nuisance" or would slow down the work, and that this attitude was inevitably, if subtly, conveyed to the workers. In addition, William Thorne, the ride foreman for the Skydiver and Allen's direct supervisor, testified that *he* never wore safety glasses when dismantling the Skydiver. A jury might reasonably infer that, given such attitudes and role models, Allen—who was only 20 years

old at the time of the accident—was effectively discouraged from wearing safety glasses.

All this is significant because the jury might have decided that if Dean & Flynn *had* required or encouraged its workers to wear safety glasses while hammering pins, Allen would have done so and would not have suffered his injury. Both the plaintiff's and the defendant's metallurgical experts testified that people hammering metal pins should wear safety glasses. Allen himself testified that he had worn safety goggles at a previous job, where such use was required by his employer. The jury might have decided that the employer's failure to adopt such a policy, despite its knowledge that safety glasses were called for, was a negligent act and a proximate cause of Allen's injury.

There was also substantial evidence that Allen's own negligence contributed to his injury. The evidence indicated that Allen failed to wear safety glasses while hammering pins, even though a supply of safety glasses was kept in the ride's trailer. Allen testified at trial that on previous occasions, while hammering the ride's pins, he had been struck by metal chips in the hands and arms. In a deposition that was read at trial, Allen said that he and other workers had been struck many times by flying chips. Thus, the jury could have found that Allen was negligent when he failed to wear safety glasses while hammering, despite his previous experience with chipping. Allen's negligence *was* argued to the jury, and he was found to be 25 percent responsible for his injury.

The evidence also suggested that Allen, who helped supervise local hired hands in dismantling the Skydiver, typically dismantled the ride in something of a rush. Allen testified that he and his crew typically dismantled the Skydiver in three-and-a-half to four hours, even though the ride manual said that the job took four-and-a-half or five hours. When Chance's counsel asked whether this speed was attributable to "the way you and Walter [Allen's coworker] worked and the way that you pushed your crew," Allen answered, "Yes." The jury might have inferred that this apparent haste—whether self-imposed or imposed by Allen's employer—made the accident more likely. If Allen was rushing, he might have been less likely to go to the trailer and get safety glasses before hammering. Moreover, William Thorne, the ride foreman for the Skydiver, testified that the pins were most likely to chip when they were not hit "square on." According to Thorne, this was the result of "being in a rush." The jury might have viewed this "rush" as indicative of negligence by Allen, his employer, or both.

Based on our examination of the trial transcript as a whole, we conclude that the evidence of employer negligence was sufficient to require the "sole proximate cause" instruction that Chance requested. In addition, Chance's counsel should have been given the opportunity to argue the employer's negligence and the "sole proximate cause" theory to the jury. It was error for the district court to deny this instruction and opportunity for argument. *See Gillentine v. McKeand,* 426 F.2d 717, 724 n. 24 (1st Cir.1970) ("an instruction must be given on a material issue if requested and supported by evidence") (citing Massachusetts cases).

Having concluded that the district court erred, we must decide whether the error was of sufficient magnitude to require a new trial. An erroneous jury instruction necessitates a new trial only if the error could have affected the result of the jury's deliberations. *See, e.g., Elwood v. Pina,* 815 F.2d 173, 177 (1st Cir.1987) (judgment will be reversed "when the erroneous instruction has affected 'the essential fairness of the trial,' or would have changed the outcome") (citations omitted); *Connors v. McNulty,* 697 F.2d 18, 21 (1st Cir.1983) (error in jury instructions will mandate reversal of judgment only if the error is found to be prejudicial, based on review of the record as a whole) (citations omitted). *See generally* Fed.R.Civ.P. 61 (error in trial court's ruling does not justify a new trial unless necessary to achieve "substantial justice"). Where the jury's verdict or its answers to special questions makes clear that its findings were not affected by the

erroneous instructions, a new trial is not appropriate. *See Elwood*, 815 F.2d at 177–78.

Plaintiff Allen argues that the jury's special findings that Chance's conduct and product were proximate causes of the injury makes clear that the jury would not have found that the conduct of the employer—whether standing alone, or combined with the conduct of the plaintiff—was the *sole* proximate cause. Although this argument appears at first blush to make logical sense, such a "logical" analysis is not necessarily applicable to jurors' thought processes. People's assessments of the causes of events are inevitably influenced by the array of possible causes that are made salient to them.[5] The jury *did* find Chance's conduct to have proximately caused the injury, but only in a context in which it was not told that it could attend to the conduct of the employer, and in which the evidence of employer negligence was not argued to them at all. As Chance argues in its brief, "When the jury found

that defendant's conduct caused the accident, the jury did not know that it could find that the accident was proximately caused by the conduct of the employer." Thus, even though the jury found Chance to have proximately caused the injury, we cannot say that it would have reached the same conclusion if it had been properly instructed and had had its attention focused upon the employer's negligence.[6]

We conclude that the district court's failure to instruct the jury on the "sole proximate cause" issue, as well as its refusal to allow Chance's counsel to refer to the employer's negligence in his closing argument, were errors that may have unfairly affected the jury's conclusions. We therefore vacate the judgment and remand for a new trial. *Cf. Ferino v. Palmer*, 133 Conn. 463, 52 A.2d 433 (1947) (trial court erred, and new trial required, when court failed to submit to jury, with appropriate instructions, defendant's claim that a non-party's negligence was the sole proximate cause of accident).[7]

---

5. This commonplace observation has been confirmed by published research in the field of cognitive psychology. In one study, researchers presented subjects with either a more complete list (or "fault tree") or a less complete list (or "pruned fault tree") of factors that might prevent a car from starting. The full "fault tree" consisted of the following possible causes: "insufficient battery charge," "defective starting system," "defective fuel system," "defective ignition system," "other engine problems," "mischievous acts or vandalism," and "all other problems." The "pruned fault tree" omitted starting system defects, ignition system defects, and mischief. In both conditions, subjects were asked to indicate their judgment as to how likely it was that each of the named causes presented to them—including the residual category of "all other problems"—was responsible for a car's failure to start. Subjects presented with the "pruned fault tree" (which omitted three of the possible causes) gave much higher estimates—compared to subjects presented with the full array of possible causes—of the likelihood that a starting failure was caused by one of the specific listed causes. They did *not* make greater use of the residual category ("all other problems") to nearly the extent that would be expected from a purely "logical" information processing standpoint. Thus, the salience of the possible causes dramatically influenced the subject's causal inferences. Fischhoff, Slovic & Lichtenstein, *Fault Trees: Sensitivity of Estimated Failure Probabilities to Problem Representation*, 4 J. Experimental Psychology: Human Perception &

Performance 330 (1978). For general discussions of the effect of the presentation or "framing" of choices on human judgment, including the effects of making particular causes salient, *see* D. Kahneman, P. Slovic & A. Tversky (Eds.), *Judgment Under Uncertainty: Heuristics and Biases* (1982).

6. Although it is not directly relevant to the issues on appeal, there is an additional way in which proper instruction and permissible argument about the employer's negligence might affect the jury's verdict. Under the Massachusetts comparative negligence statute, Mass.Gen.Laws ch. 231, § 85 (1986), the jury must apportion the fault between plaintiff and defendant, and the two percentages must total 100 percent. The possible fault of nonparties is not to be included in this apportionment. *See Correia*, 388 Mass. at 346–52, 446 N.E.2d at 1035–38. Nevertheless, assuming that the jury finds both the defendant and the plaintiff to be negligent, bringing evidence of the employer's negligence to the jury's attention is likely to affect the allocation of responsibility between defendant and plaintiff, albeit not in entirely predictable ways. *See generally* the discussion of "phantom tortfeasors" in 2 *Comparative Negligence* § 13.20 (Matthew Bender 1988).

7. *Compare Robertson v. General Tire & Rubber Co.*, 123 Ill.App.3d 11, 78 Ill.Dec. 587, 462 N.E.2d 706 (1984), in which the Appellate Court of Illinois affirmed the trial court's rejection of the

In holding that there must be a new trial, we reject Allen's argument that any new trial on the "sole proximate cause" issue should be restricted to the breach of warranty claim, and that the jury's negligence finding should stand. The requirement that a defendant be found to have proximately caused a plaintiff's injury is not restricted to breach of warranty claims. To the contrary, a defendant's demonstration that the sole proximate cause of the injury lies elsewhere is a complete defense against both negligence and warranty claims. Indeed, the portion of *Correia* that discussed the "sole proximate cause" issue, 388 Mass. at 352, 446 N.E.2d at 1038–39, related to a manufacturer's *negligence.* We have no reason to suppose, therefore, that the "sole proximate cause" doctrine does not apply to negligence claims.

Allen quotes language from a recent Supreme Judicial Court opinion that on its face appears to support his argument that any error in instructing the jury on sole proximate cause is relevant only to the breach of warranty claim:

> An examination of the principles underlying liability in negligence and liability in warranty indicates that, while sole proximate cause is a component of the warranty inquiry, negligence liability does not focus on a sole cause of the plaintiff's injuries.

*Colter v. Barber-Greene Co.,* 403 Mass. 50, 61, 525 N.E.2d 1305, 1312–13 (1988). But we do not read the discussion in *Colter* as modifying the general rule that a defendant's demonstration that the sole proximate cause of an injury lies elsewhere is a defense against negligence claims. The discussion in *Colter* is offered specifically to explain why the "knowing and unreasonable use" defense, discussed in Part II, *infra,* applies only to breach of warranty

and not to negligence claims. In negligence cases, the Massachusetts comparative negligence statute, Mass.Gen.Laws ch. 231, § 85, governs the apportionment of responsibility as between plaintiff and defendant, and thus a plaintiff's "knowing and unreasonable use" of a product does not in itself preclude a finding that defendant was negligent. In explaining this state of affairs, the Supreme Judicial Court commented that in this comparative negligence context the plaintiff's "knowing and unreasonable use" is not viewed as the "sole proximate cause" of the injury. We do not believe, however, that the court meant to say that the "sole proximate cause" doctrine is *never* applicable to negligence. Not only would such a holding be intuitively implausible, it would also undermine the court's discussion of "sole proximate cause" in *Correia,* something that the *Colter* court in no way suggested that it was doing. Therefore, the new trial must be held on both the negligence and the warranty claims.

## II. THE "KNOWING AND UNREASONABLE USE" DEFENSE

Having concluded that a new trial is required, we need not reach Chance's second argument on appeal, that the district court erred in refusing its request to instruct the jury on the "knowing and unreasonable use" defense. We nevertheless discuss this issue, without deciding it, believing this will be helpful to the district court at a retrial.

In *Correia,* the Supreme Judicial Court noted that the conduct of the user of a product will prevent recovery on a breach of warranty claim "when he unreasonably uses a product that he knows to be defective and dangerous." 388 Mass. at 356, 446 N.E.2d at 1040. *See also Colter v.*

defendant manufacturer's proposed defense that the negligence of the non-party employer was the sole cause of plaintiff's decedent's death. The court noted that "[t]his result is not unfair to the defendant since [under Illinois law] the recourse of a third party action [by the defendant manufacturer against the employer] is available." 78 Ill.Dec. at 590, 462 N.E.2d at 710 (citation omitted). Under Massachusetts law, in contrast, no such third party action against a

non-party employer is permitted, if the plaintiff himself could not bring a claim against the employer outside the Workers' Compensation system. *See Correia,* 388 Mass. at 346, 446 N.E. 2d at 1035 (citing *Liberty Mutual Insurance Co. v. Westerlind,* 374 Mass. 524, 373 N.E.2d 957 (1978)). In Massachusetts, therefore, it *would* be unfair to preclude a defendant from raising the defense that the employer was solely responsible for plaintiff's injury.

*Barber–Greene Co.,* 403 Mass. at 60, 525 N.E.2d at 1312 ("a plaintiff's knowing and unreasonable use of a defective product is an affirmative defense to a defendant's breach of warranty") (citation omitted).[8] At trial, Chance requested the district court to instruct the jury on this "knowing and unreasonable use" defense to the warranty claim. The district court declined to give such an instruction, stating that "I don't think there is any evidence in this case that would warrant the jury in finding anything other than he may have been contributorily negligent. I don't find any evidence that he knew and went ahead willy-nilly."

Following the verdict for Allen, and Chance's posttrial motion, the district court apparently had second thoughts about the possible applicability of the "knowing and unreasonable use" defense. Noting that the case involved a controlling and unresolved question of Massachusetts law, the district court certified the following question to the Supreme Judicial Court:

> In a personal injury action based on breach of an implied warranty of merchantability, does the misuse defense apply to foreseeable uses of the product as well as to unforeseeable uses?

The district court stated that it had read the Supreme Judicial Court's precedents as indicating that "a manufacturer may be held liable for breach of an implied warranty of merchantability, even if the plaintiff misuses the product, so long as that misuse is foreseeable" (citing *Back v. Wickes Corp.,* 375 Mass. 633, 378 N.E.2d 964 (1978)). The court noted, however, that *Correia* "contains language indicating that the misuse defense may apply regardless of whether the plaintiff's use of the product was foreseeable" (citing *Correia,* 388 Mass. at 357, 446 N.E.2d at 1041).

The Supreme Judicial Court answered the certified question in the affirmative. It made clear that the "knowing and unreasonable use" defense applies even if the misuse was foreseeable:

> [T]he defendant's ability to foresee the plaintiff's voluntary, knowing, and unreasonable misuse of the product is irrelevant under our cases. Foreseeability of use is an element of the plaintiff's case and has nothing to do with the affirmative defense that the plaintiff's unreasonable conduct in the face of a known defect was a breach of duty that caused the injury. In so stating, we reject the suggestion that a defendant can be liable for breach of warranty of merchantability if the defendant should reasonably have foreseen that the plaintiff would *unreasonably* and voluntarily use a product, knowing it to be defective and dangerous.

*Allen v. Chance Manufacturing Co.,* 398 Mass. 32, 35–36, 494 N.E.2d 1324, 1326–27 (1986) (emphasis in original) (footnote omitted).

Even though the Supreme Judicial Court answered the certified question in the affirmative, the district court proceeded to deny the motion for a judgment notwithstanding the verdict or for a new trial. The district court issued this denial in a four-line order, without any explanation. It would have been helpful if the district court had stated its reasons for denying Chance's post-trial motion, especially inasmuch as its denial seemed to fly in the face of a Supreme Judicial Court opinion that the district court had expected, when it certified the question, to be "controlling." Nevertheless, a district court is not foreclosed from reevaluating the matter before it after receiving the answer to a certified question. In this case, we assume that after further consideration the district court decided that its initial appraisal of the evidence was correct ("I don't find any evidence that [Allen] knew and went ahead willy-nilly") and that the evidence did not require submitting the "knowing and unreasonable use" defense to the jury.

From our vantage point upon studying the record, the question is close as to whether the evidence required submitting the "knowing and unreasonable use" de-

---

**8.** Defendant does not argue that the "knowing and unreasonable use" defense is applicable to the negligence claim. The Supreme Judicial Court made clear in *Colter* that this defense is relevant only to breach of warranty claims. 403 Mass. at 60–65, 525 N.E.2d at 1312–15.

fense to the jury. In its answer to the district court's certified question, the Supreme Judicial Court elaborated on the nature of the defense:

[T]he plaintiff is barred from recovery because (1) he violated a duty to act reasonably with respect to a product he knew to be defective and dangerous and (2) that conduct was a cause of the injury. [*Correia*, 388 Mass.] at 355–356 & n. 12 [446 N.E.2d 1033]. A defendant making such a claim must prove that the plaintiff knew of the product's defect and its danger, that he proceeded voluntarily and unreasonably to use the product and that, as a result, he was injured. *Id.* at 355–357 [446 N.E.2d 1033]. Restatement (Second) of Torts § 402A, comment n (1965). This defense differs from the traditional doctrine of assumption of the risk because it combines a subjective element, the plaintiff's actual knowledge and appreciation of the risk, with an objective standard, the reasonableness of his conduct in the face of the known danger.... Compare Restatement (Second) of Torts § 402A, comment n (plaintiff "proceeds unreasonably to make use of the product") with *id.* §§ 496C, 496E (plaintiff need only encounter known risk voluntarily).

*Allen v. Chance*, 398 Mass. at 34, 494 N.E.2d at 1326 (citations omitted).

Thus, to establish a "knowing and unreasonable use" defense, the defendant must show not only that the plaintiff used the product voluntarily and unreasonably, but also that the plaintiff subjectively appreciated the danger. *See also Venturelli v. Cincinnati*, 850 F.2d 825, 830 (1st Cir.1988) (discussing the elements of this defense). In this case, a jury could find that Allen acted unreasonably when he hammered the pin without wearing safety glasses; indeed, the jury did find Allen to have been 25 percent responsible for his injury. A jury could also find that Allen's unreasonable conduct was voluntary. After all, safety glasses were available and there was no evidence that Allen had been prevented by his employer or anyone else from wearing them. *Cf. Downs v. Gulf & Western Manufacturing Co.*, 677 F.Supp. 661, 665 (D.Mass.1987) (holding that a worker's misuse of a punch press could not be found to be voluntary, when her foreman had ordered her to work in the dangerous manner that led to her injury).

There is some question, however, as to whether a jury could find Allen to have subjectively appreciated the danger to his eyes of hammering the pin without wearing safety glasses. To be sure, Allen had been struck in the hands and arms by flying chips on prior occasions. He knew that the pins had a tendency to chip. Nevertheless, there was no evidence that Allen realized that the chips might fly into his eyes. Allen had never before been struck in the eyes by chips, he had never read the Skydiver manual (which included the warning to wear safety glasses), and there was no evidence that he had ever been made aware of the need to wear safety glasses while hammering. *Cf. Downs v. Gulf & Western*, 677 F.Supp. at 665–66 ("To constitute a complete defense to a breach of warranty, plaintiff must at least have perceived that a safety device is standard equipment or regarded as necessary to safe operation, so that ... using the equipment without the device is dangerous") (footnote and citations omitted). If there were no evidence from which the jury could find that Allen subjectively appreciated the risk, a jury instruction on the "knowing and unreasonable use" defense would be inappropriate. We do not decide the issue, however, but leave it to the district court to determine whether the evidence at retrial is sufficient to justify such a jury instruction.

## III. DAMAGES

Neither party has specifically objected to the amount of compensatory damages awarded by the jury. This does not seem to be a case in which the issues of liability and damages are "so interwoven" that the liability issue should not be submitted to the jury by itself, without disturbing the jury's determination that Allen's total damages amount to $1 million. *See Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1931). *See also* Fed.R.Civ.P.

59(a) (permitting a new trial "on all or part of the issues"). Thus, the new trial should be confined to the issue of liability, unless upon argument of the parties on remand, the district court is persuaded that good reasons exist for a new trial on damages as well. *See Winn v. Lafayette Town House,* 839 F.2d 835 (1st Cir.1988) (discussing factors to be considered in deciding whether new trial should encompass damages as well as liability); *Crane v. Consolidated Rail Corp.,* 731 F.2d 1042 (2d Cir.) (same), *cert. denied,* 469 U.S. 854, 105 S.Ct. 179, 83 L.Ed.2d 114 (1984).

*The judgment of liability is vacated, and the case is remanded for a new trial on both the negligence and warranty claims.*